TRACY L. WILKISON
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
DAVID PINCHAS (Cal. Bar No. 130751)
TALYA M. SEIDMAN[1]
Assistant United States Attorney
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-2920
        Facsimile: (213) 894-7819
        E-mail: David.Pinchas@usdoj.gov
                Talya.Seidman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| OSCAR ENRIQUE NUNEZ EUCEDA,<br><br>              Plaintiff,<br><br>              v.<br><br>UNITED STATES OF AMERICA,<br><br>              Defendant. | No.  2:20-cv-10793-VAP-(GJSx)<br><br>Hearing Date:      March 29, 2021<br>Hearing Time:      2:00 p.m.<br>Courtroom:          8A, First Street<br>                          Courthouse<br><br>Honorable Virginia A. Phillips |

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

PLAINTIFF'S COMPLAINT AND ACTION

---

[1] Admitted to practice under Local Rule 83-2.1.4.1. *See* Order, *In Re Application Of Talya M. Seidman For Admission Pursuant To Local Rule 83-2.1.4.1*, C.D. Cal. No. 2:20-CM-00215-PSG (Nov. 9, 2020).

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2        PLEASE TAKE NOTICE that, on Monday, March 29, 2021 at 2 p.m., or as soon

3   thereafter as it may be heard, Defendant United States of America will, and hereby does,

4   move this Court for an order dismissing Plaintiff's action without leave to amend.  This

5   motion will be made in Courtroom 8A of the First Street Courthouse located at 350 West

6   1st Street, Los Angeles, CA 90012 before the Honorable Virginia A. Phillips, United

7   States District Judge.

8        Defendant brings the motion under Federal Rule of Civil Procedure 12(b)(1) for

9   lack of subject matter jurisdiction or, in the alternative, pursuant to Fed. R. Civ. P.

10   12(b)(6) for failure to state a claim upon which relief can be granted.  In the alternative,

11   Defendant requests that the Court transfer this action to the Southern District of Texas

12   pursuant to 28 U.S.C. §§ 1391(c)(1), 1406(a).

13        This motion is made upon this Notice, and all pleadings, records, and other

14   documents on file with the Court in this action, and upon such oral argument as may be

15   presented at the hearing of this motion.

16        This Motion follows the meeting of counsel required by Local Rule 7-3 which

17   took place on February 22, 2021.

18   Dated: March 1, 2021                    Respectfully submitted,

19                                           TRACY L. WILKISON
                                             Acting United States Attorney
20                                           DAVID M. HARRIS
                                             Assistant United States Attorney
21                                           Chief, Civil Division
                                             JOANNE S. OSINOFF
22                                           Assistant United States Attorney
                                             Chief, General Civil Section
23

24                                             /s/ David Pinchas
                                             _____
25                                           DAVID PINCHAS
                                             Assistant United States Attorney
26                                           Attorneys for Defendant

27

28

i

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO DISMISS ............................................... i

I.     INTRODUCTION ..................................................................................... 1

II.    BACKGROUND ....................................................................................... 2

       A.    Legal Framework for Aliens Entering the United States Unlawfully ......... 2

       B.    Legal Framework for Immigration Custody and Release of Minors .......... 2

       C.    Prior Executive Branch Directives Regarding Immigration
             Enforcement ................................................................................... 4

       D.    Allegations of Plaintiff's Complaint ................................................... 5

III.   ARGUMENT ............................................................................................ 6

       A.    Plaintiff's Claims Are Barred Because the FTCA Does Not
             Authorize Recovery For Constitutional Torts. ..................................... 6

       B.    Plaintiff's Claims Are Barred by the FTCA's Discretionary Function
             Exception ........................................................................................ 7

       C.    Plaintiff's Claims Are Barred by the FTCA's Due Care Exception .......... 13

       D.    Plaintiff's Claims Are Barred Because There Is No Private Analog ......... 14

       E.    In the Alternative, this Action should be Transferred to the Southern
             District of Texas ............................................................................. 15

IV.    CONCLUSION ......................................................................................... 16

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

**Cases**

4

*Accardi v. United States,*

5

 435 F.2d 1239 (3d Cir. 1970)......................................................................13

6

*Aguilar v. United States,*

7

 No. 1:16-048, 2017 WL 6034652 (S.D. Tex. June 7, 2017) ...................11

8

*Air Shuttle Corp. v. United States,*

9

 112 F.3d 532 (1st Cir. 1997)....................................................................15

10

*Antonelli v. Crow,*

11

 No. 08-261, 2012 WL 4215024 (E.D. Ky. Sept. 19, 2012)......................11

12

*Arita v. United States,*

13

 470 F. Supp. 3d 663, 2020 WL 3542256 (S.D. Tex. June 30, 2020) ...............9, 11, 12

14

*Barian v. United States,*

15

 728 Fed. Appx. 703 (9th Cir. 2018).........................................................8

16

*Berkovitz v. United States,*

17

 486 U.S. 531 (1988)..............................................................................7, 12

18

*Boyles v. Kerr,*

19

 855 S.W.2d 593 (Tex. 1993)....................................................................15

20

*Bultema v. United States,*

21

 359 F.3d 379 (6th Cir. 2004) ..................................................................11

22

*Bunikyte v. Chertoff,*

23

 No. 07-164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) .......................4

24

*Campos v. United States,*

25

 888 F.3d 724 (5th Cir. 2018) ..................................................................11

26

*Cosby v. Marshals Service,*

27

 520 F. App'x 819 (11th Cir. 2013) ..........................................................11

28

iii

*D.B. v. Cardall*,

   826 F.3d 721 (4th Cir. 2016) .................................................................. ...14

*Dalehite v. United States*,

   346 U.S. 15 (1953) .................................................................................. ...13

*Dupree v. United States*,

   247 F.2d 819 (3d Cir. 1957)...................................................................... ...13

*Elgamal v. Bernacke*,

   714 Fed. App'x 741 (9th Cir. 2018) ........................................................ ...15

*FDIC v. Meyer*,

   510 U.S. 471 (1994)................................................................................. .....6

*Ferguson v. United States*,

   792 Fed. Appx. 494 (9th Cir. 2020)......................................................... ....7

*Flores v. Lynch*,

   828 F.3d 898 (9th Cir. 2016)............................................................3, 4, 14

*Galveston, H. & S.A. Ry. Co. v. Gonzales*,

   151 U.S. 496 (1894)................................................................................ ...16

*Gonzalez v. United States*,

   814 F.3d 1022 (9th Cir. 2016) ................................................................. .....8

*Gordon v. United States*,

   739 Fed. Appx. 408 (9th Cir. 2018)......................................................... .....8

*Hampton v. Mow Sung Wong*,

   426 U.S. 88 (1975)................................................................................... .....9

*Harrison v. Fed. Bureau of Prisons*,

   464 F. Supp. 2d 552 (E.D. Va. 2006) ...................................................... ...11

*Hernandez  v. United States*,

   83 Fed. Appx. 206 (9th Cir. 2003)........................................................... .....9

iv

*In re Sealed Case*,
829 F.2d 50 (D.C. Cir. 1987) ................................................................... 8

*J.F.G. v. Hott*,
921 F.3d 204 (4th Cir. 2019) ................................................................... 13

*J.P. v. Sessions*,
No. LA CV1806081 JAK (SKx), 2019 WL 6723686 (C.D. Cal. Nov. 5, 2019) .... 16

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018) ................................................................................ 2

*Lam v. United States*,
979 F.3d 665 (9th Cir. 2020) ................................................................... 12

*Linder v. United States*,
937 F.3d 1087 (7th Cir. 2019) ................................................................. 13

*Lineberry v. United States*,
No. 3:08-cv-0597, 2009 WL 763052 (N.D. Tex. Mar. 23, 2009) ............... 11

*Marin-Garcia Holder*,
647 F.3d 666 (7th Cir. 2011) ................................................................... 13

*McGowan v. United States*,
825 F.3d 118 (2d Cir. 2016) .................................................................... 15

*Mejia-Mejia v. ICE*, No. 18-1445,
2019 WL 4707150 (D.D.C. Sept. 26, 2019) ............................................... 9

*Mirmehdi v. United States*,
662 F.3d 1073 (9th Cir. 2011) ................................................................... 9

*Molzof v. United States*,
502 U.S. 301 (1992) ................................................................................. 7

*Ms. L. v. ICE*,
310 F. Supp. 3d 1133 (S.D. Cal. 2018) ..................................................... 6

*Najera v. United States*,

No. 16-cv-459, 2016 WL 6877069 (E.D. Va. Nov. 22, 2016) ................................ ...16

*Of Cent. Am. Refugees v. I.N.S.*,

795 F.2d 1434 (9th Cir. 1986) ................................................................... .....9

*Patel v. United States*,

398 F. App'x 22 (5th Cir. 2010) ............................................................... ...11

*Payne-Barahana v. Gonzales*,

474 F.3d 1 (1st Cir. 2007) ............................................................................13

*Powell v. United States*,

233 F.2d 851 (10th Cir. 1956) ............................................................... ...14

*See Taylor v. United States v. PTO*,

551 Fed. Appx. 341 (9th Cir. 2013) ..........................................................17

*Reno v. Am.-Arab Anti-Discrimination Comm.*,

525 U.S. 471 (1999) ................................................................................. .....8

*Sloan v. H.U.D.*,

236 F.3d 756 (D.C. Cir. 2001) ............................................................... ...10

*Smith v. United States*,

375 F.2d 243 (5th Cir. 1967) ................................................................... .....8

*Sutter v. United States*,

No. 17-07245 SVW (DFM), 2019 WL 1841905 (C.D. Cal. March 12, 2019) ....... ...11

*United States v. Armstrong*,

517 U.S. 456 (1996) ................................................................................. .....8

*United States v. Delgado-Garcia*,

374 F.3d 1337 (D.C. Cir. 2004) ............................................................... .....8

*United States v. Dominguez-Portillo*,

No. 17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018)......................3, 4, 13, 16

*United States v. Gaubert*,

   499 U.S. 315 (1991) ...................................................................7, 8, 12

*United States v. Nixon*,

   418 U.S. 683 (1974) ..................................................................... 8

*United States v. Olson*,

   546 U.S. 43 (2005) ................................................................... 15

*United States v. Orleans*,

   425 U.S. 807 (1976) ..................................................................... 6

*United States v. S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*,

   467 U.S. 797 (1984) ................................................................... 12

*Verinakis v. Med. Profiles, Inc.*,

   987 S.W.2d 90 (Tex. App. 1998) ................................................................... 15

*Walding v. United States*,

   955 F. Supp. 2d 759 (W.D. Tex. 2013) ................................................................... 10

**Statutes**

6 U.S.C. § 279 ................................................................... 2

6 U.S.C. § 279(2)(B) ................................................................... 3

6 U.S.C. § 279(a) ................................................................... 3, 10

6 U.S.C. § 279(g)(2) ................................................................... 3

8 U.S.C. § 279(g) ................................................................... 14

8 U.S.C. § 1182(d)(5) ................................................................... 2

8 U.S.C. § 1226(a) ................................................................... 2

8 U.S.C. § 1231(g)(1) ................................................................... 2

8 U.S.C. § 1232 ................................................................... 2

8 U.S.C. § 1232(b)(1) ................................................................... 3, 10

8 U.S.C. § 1232(b)(3) ................................................................... 3, 14

vii

8 U.S.C. § 1232(c)(2)(A) ................................................................. 3, 9

8 U.S.C. §§ 1225 ........................................................................... ...14

8 U.S.C. §§ 1225(a)(1) .................................................................. .....2

8 U.S.C § 1325 .......................................................................2, 4, 5

28 U.S.C. § 1346(b)…………………………………………….1,6, 15

28 U.S.C. § 1402(b) ................................................................. 15, 16

28 U.S.C. § 2674 ....................................................................... ...15

28 U.S.C. § 2680(a) ...............................................................1, 7, 13

28 U.S.C. §§ 1391(c)(1) .......................................................i, 1, 15

 **Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................ ..i, 1

Fed. R. Civ. P. 12(b)(1) ................................................................ ..i, 1

**Other**

Executive Order 13767 ............................................................. .....4

Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry,

   (April 6, 2018), DOJ 18-417, 2018 WL 1666622 ................................. .....5

## I.     INTRODUCTION

Defendant United States of America respectfully moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, based on the grounds set forth below in the memorandum in support.

Plaintiff Oscar Enrique Nunez Euceda ("Plaintiff") brings this action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680 ("FTCA"), seeking damages based on his detention and separation from his children.  The United States has denounced the prior practice of separating children from their families at the United States-Mexico border and committed itself to family reunification.  *See* Executive Order on the Establishment of Interagency Task Force on the Reunification of Families, Feb. 2, 2021, available at https://www.whitehouse.gov/briefing-room/presidential-actions/2021/02/02/executive-order-on-the-establishment-of-interagency-task-force-on-the-reunification-of-families/.

Nevertheless, Plaintiff's claims are barred for multiple reasons.  First, Plaintiff's claims are barred because the FTCA does not authorize recovery for "constitutional torts" like those Plaintiff pursues here.  Second, Plaintiff's claims are barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), which shields the United States from liability for discretionary decision-making relating to enforcement of federal criminal and immigration law.  Third, Plaintiff's claims are barred by the due care exception to the FTCA, because the government actions that resulted in the separation were authorized by federal criminal and immigration law.  *Id.*  Fourth, there is no private person analog for Plaintiff's claims, as required for a waiver of sovereign immunity under 28 U.S.C. § 1346(b)(1), because the claims arise out of the enforcement of federal statutes, determinations relating to immigration status, and decisions regarding confinement that are activities in which only the government, and not private parties, may engage.  In the alternative, this action should be transferred to the Southern District of Texas pursuant to 28 U.S.C. §§ 1391(c)(1), 1404, 1406.

1

## II.    BACKGROUND

### A.    Legal Framework for Aliens Entering the United States Unlawfully

Under the Immigration and Nationality Act ("INA"), any alien present in the United States without being admitted or paroled is inadmissible and subject to removal. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Such individuals may also be subject to prosecution for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C § 1325.

Aliens present in the United States without being admitted are considered "applicant[s] for admission" and are "inspected by immigration officers" to assess the validity of their claims. *See* 8 U.S.C. §§ 1225(a)(1), (a)(3), (b). The INA "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded." *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). Specifically, such aliens "shall be detained pending a final determination of credible fear prosecution and, if found not to have such fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and (b)(2)(A). The Department of Homeland Security ("DHS") may in its "discretion" grant parole and release such individuals only under prescribed circumstances on a "case-by-case basis." 8 U.S.C. § 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii) and (b)(4)(ii).

The detention of aliens is further authorized by 8 U.S.C. § 1226(a), which provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The federal government possesses statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1).

### B.    Legal Framework for Immigration Custody and Release of Minors

Federal immigration law authorizes the United States to provide for the custody and care of minor children entering the United States unlawfully. *See* 6 U.S.C. § 279 and 8 U.S.C. § 1232. Specifically, the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") is charged with "the care and placement of

2

unaccompanied alien children who are in federal custody by reason of their immigration status." 6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the Trafficking Victims Protection Reauthorization Act of 2008, 8 U.S.C. § 1232(b)(3) ("TVPRA") "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). However, ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(2)(B).

In addition to this legal framework, the federal government entered into a consent decree (the *Flores* Agreement)[2] enforced in the Central District of California that "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Agreement ¶ 9). Under the *Flores* Agreement, "[w]ithin five days of arrest, [DHS] must transfer the minor to a non-secure, licensed facility[.]" *Id.* at 902-03 (quoting *Flores* Agreement ¶ 12).

However, the *Flores* Agreement "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id.* at 906; *see also United States v. Dominguez-Portillo,* No. 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that

---

[2] *See Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF 101).

parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]").  Nor does the *Flores* Agreement provide any rights to adult detainees, including any rights of release.  *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at \*14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at \*16 (W.D. Tex. Apr. 9, 2007).  While the *Flores* Agreement gives preference to release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

### C.   Prior Executive Branch Directives Regarding Immigration Enforcement

During the time period relevant to this action, the Executive Branch issued several directives regarding enforcement of federal immigration laws in response to a "surge of illegal immigration at the southern border with Mexico" and the operation of "sophisticated drug- and human-trafficking networks." Executive Order 13767 § 1, 82 Fed. Reg. 8793 (Jan. 30, 2017).  In January, 2017, the President issued Executive Order No. 13767 ("EO 13767") stating that "[i]t is the policy of the executive branch to . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]"  *Id.* § 2(b). EO 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law[,]" *id.* § 6, and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute . . . and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole."  *Id.* § 11(d).  On April 11, 2017, DOJ issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement, and directed that federal law enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325, noting that "[c]onsistent and vigorous enforcement of key laws will disrupt

4

organizations and deter unlawful conduct."[3]

On April 6, 2018, the Attorney General issued a "Memorandum for Federal Prosecutors along the Southwest Border."  U.S. DOJ, News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (hereinafter the "Zero Tolerance Memorandum").  The memorandum directed federal prosecutors along the southwest border to immediately accept for prosecution, to the extent practicable, all § 1325(a) offenses referred for prosecution.  *Id*. Consistent with EO 13767, and the April 2018 the Zero Tolerance Memorandum, DHS referred for prosecution adult aliens – including those traveling with children – who unlawfully entered the United States on the southwest border in violation of § 1325 or other statutory provisions authorizing criminal prosecution.  Minor children of those adults were transferred to ORR custody as UACs.

### D.    Allegations of Plaintiff's Complaint

On or about May 19, 2018, Plaintiff unlawfully crossed the United States border into Texas between ports of entry with his minor children, O.N.A. and T.N.A., in violation of 8 U.S.C. § 1325.  Complaint ¶¶ 6-8.  Shortly after crossing, Plaintiff and his children were apprehended by Customs and Border Protection ("CBP") officers and transported to a nearby holding center.  *Id*. ¶¶ 24-27.  Consistent with the Executive Branch enforcement directives discussed above, Plaintiff was detained and separated from his children as he was transported from the CBP holding facility to ICE Port Isabel Service Processing Center.  *Id*. ¶¶ 8, 28.

Plaintiff was detained at the Port Isabel Service Processing Center for approximately one to two weeks.  *Id*. ¶¶ 8, 31-33.  He was then transferred to a Detention Center in Los Fresnos, Texas, where he was detained for approximately one to two more weeks.  *Id*. ¶¶ 35-36.  Plaintiff was briefly transferred back to the ICE Port Isabel Center and then deported back to the Honduras, approximately one month after his initial illegal

---

[3] *See* U.S. DOJ, Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download.

1    entry into the United States.  *Id.* ¶ 40.  Both of Plaintiff's minor children, O.N.A. and
2    T.N.A., were released to their mother in North Carolina.  *Id.* ¶ 47.

3         Over two years later, Plaintiff filed this lawsuit against the United States seeking
4    money damages pursuant to the FTCA, seeking redress for the "forced separation of
5    [Plaintiff] from his children by the government of the United States when they arrived
6    here seeking asylum."  *Id.* ¶ 1.  Plaintiff alleges that he and his children were subjected to
7    the same "family separation policy" ruled "unconstitutional" on due process grounds in
8    *Ms. L. v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018).  Complaint ¶¶ 4-5, 20-21, 57-58,
9    61-64.  In addition, Plaintiff alleges that the separation practices were unconstitutional
10   because they were "motivated by discriminatory animus toward Latino immigrants of
11   Central American origin."  *Id.* ¶ 63.

12   **III.   ARGUMENT**

13        **A.    Plaintiff's Claims Are Barred Because the FTCA Does Not Authorize**
14              **Recovery For Constitutional Torts.**

15        The United States enjoys broad immunity from suit and "can be sued only to the
16   extent that it has waived its immunity."  *United States v. Orleans*, 425 U.S. 807, 814
17   (1976).  Accordingly, absent a specific waiver, sovereign immunity bars a suit against the
18   government for lack of subject matter jurisdiction.  *See FDIC v. Meyer*, 510 U.S. 471, 475-
19   76 (1994).  While the FTCA provides a limited waiver of sovereign immunity that
20   authorizes suits against the United States for certain common-law tort claims, the Supreme
21   Court has held that the FTCA does not provide a cause of action for torts involving alleged
22   constitutional violations.  *Id.* at 477-78.  As the Supreme Court explained in *Meyer*, a claim
23   is actionable under the FTCA only if the United States would be liable as a private person
24   in accordance with the law of the place where the act or omission occurred.  *Id.* (quoting
25   28 U.S.C. § 1346(b)).  "A constitutional tort claim . . . could not contain such an
26   allegation."  *Id.* at 477.  Accordingly, "the United States simply has not rendered itself
27   liable under § 1346(b) for constitutional tort claims."  *Id.*

28

6

1    Here, the essence of the Complaint is that Plaintiff should recover for alleged
2    violations of his constitutional rights.  Complaint ¶¶ 20-21; 61-64.

3    **B.    Plaintiff's Claims Are Barred by the FTCA's Discretionary Function**
4    **Exception**

5    Plaintiff's claims further fail because they fall within express exceptions in the
6    FTCA that "are designed to protect certain important governmental functions and
7    prerogatives from disruption."  *Molzof v. United States*, 502 U.S. 301, 311 (1992).  One
8    such exception – the "discretionary function" exception – bars "[a]ny claim" that is "based
9    upon the exercise or performance or the failure to exercise or perform a discretionary
10   function or duty on the part of a federal agency or an employee of the Government,
11   whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  As the legislative
12   history of the FTCA explains, the statute was "not intended to authorize suit for damages
13   to test the validity of or provide a remedy on account of such discretionary acts even
14   though negligently performed and involving an abuse of discretion."  H.R. Rep. No. 77-
15   2245, 77th Cong., 2d Sess., at 10.

16   The discretionary function exception bars claims based on acts that "involve an
17   element of judgment or choice" and are "based on considerations of public policy."  *United*
18   *States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (citation and internal quotation marks
19   omitted).  "The basis for the discretionary function exception was Congress' desire to
20   'prevent judicial "second-guessing"' of legislative and administrative decisions grounded
21   on social, economic, and political policy through the medium of an action in tort."
22   *Berkovitz v. United* States, 486 U.S. 531, 536-37 (1988).

23   Under this exception, courts will look at whether the conduct at issue is "susceptible
24   to policy analysis."  *Ferguson v. United States,* 792 Fed. Appx. 494, 495 (9th Cir. 2020).
25   "The focus of the inquiry is *not* on the agent's subjective intent in exercising the discretion
26   conferred by statute or regulation."  *Gaubert*, 499 U.S. at 325 (emphasis added).  Rather,
27   "[w]hen established governmental policy, as expressed or implied by statute, regulation,
28   or agency guidelines, allows a Government agent to exercise discretion, it must be

7

1  presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.*
2  at 324; *see also Gonzalez v. United States*, 814 F.3d 1022, 1027-28 (9th Cir. 2016).

3      In sum, if the challenged actions "involve an element of judgment or choice" and
4  are "susceptible to" policy analysis, the discretionary function exception applies and the
5  complaint must be dismissed for lack of subject matter jurisdiction, regardless of whether
6  the government acted negligently or abused its discretion. *See Gaubert*, 499 U.S. at 323;
7  *Barian v. United States*, 728 Fed. Appx. 703, 704 (9th Cir. 2018); *Gordon v. United States*,
8  739 Fed. Appx. 408 (9th Cir. 2018) (affirming dismissal of action pursuant to Rule
9  12(b)(1)); *Gonzalez v. United States*, 814 F.3d 1022 (9th Cir. 2016) (same).

10      Plaintiff's claims are barred because they involve precisely the sort of discretionary
11  decision-making that is shielded by the FTCA.  Whether the discretionary decisions were
12  in support of a policy that remains in place or one that has subsequently been rejected (as
13  is the case here), they remain discretionary decisions that cannot give rise to liability under
14  the FTCA.  As the Supreme Court has recognized, "[t]he Attorney General and United
15  States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United*
16  *States v. Armstrong,* 517 U.S. 456, 464 (1996).  Indeed, "[t]he Supreme Court has long
17  recognized that 'the Executive Branch has exclusive authority and absolute discretion to
18  decide whether to prosecute a case.'" *In re Sealed Case*, 829 F.2d 50, 63 (D.C. Cir. 1987)
19  (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)); *Smith v. United States*, 375
20  F.2d 243, 247 (5th Cir. 1967) ("decisions concerning enforcement" are matter of
21  "discretion").

22      Concerns about "subjecting the prosecutor's motives and decision making to
23  outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-*
24  *Discrimination Comm.*, 525 U.S. 471, 490 (1999).  This is because the "country's border-
25  control policies are of crucial importance to the national security and foreign policy of the
26  United States." *United States v. Delgado-Garcia*, 374 F.3d 1337, 1345 (D.C. Cir. 2004).
27  Further, law enforcement authorities have discretionary decision-making authority
28  regarding detention and conditions of confinement.  Thus, for example, "Congress has

placed the responsibility of determining where aliens are detained *within the discretion* of the Attorney General." *Cmtte. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added).  Indeed, decisions relating to aliens, including placement and detention, are so "vitally and intricately interwoven with contemporaneous policies [and] so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Id.* (quoting *Hampton v. Mow Sung Wong*, 426 U.S. 88 (1975)).[4]

Where children are involved, there are many additional policy considerations to take into account.  As is evidenced by the regulatory framework outlined above, government officials are required to take into account not only a number of law enforcement considerations, but also child welfare considerations, such as what is in the "best interests of the child." *See* 8 U.S.C. § 1232(c)(2)(A).  Such decisions relating to health and welfare are the very sort of discretionary decisions that the discretionary function exception was designed to protect.

Plaintiff was detained pursuant to the government's then-existing policy to enforce existing immigration law when confronted with a surge in illegal immigration and human-trafficking along the southern border.  That decision was not merely "susceptible to" a policy analysis, but the government spelled out the policies it sought to further through its enforcement efforts in a series of specific Executive directives.  As other courts have recognized, the "zero tolerance" policy at issue here—which was subsequently revoked—"amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, No. 18-1445, 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita v. United States*, 470 F. Supp. 3d 663, 2020 WL 3542256, at *7 (S.D. Tex. June 30, 2020).

---

[4] *See also Mirmehdi v. United States,* 662 F.3d 1073, 1081-82 (9th Cir. 2011) ("Because the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy, it falls within this [FTCA] exception."); *Hernandez  v. United States*, 83 Fed. Appx. 206 (9th Cir. 2003) (security measures taken pertaining to prisoners in a federal detention center are within the FTCA's discretionary function exception).

As a result of the government's discretionary decision to detain Plaintiff, his minor children were placed in the care and custody of ORR, which was vested with authority to make a range of discretionary decisions to ensure their health and welfare. In particular, "[i]t is clear that the ultimate choice of facility for housing unaccompanied alien children is a decision vested with policy considerations." *Walding v. United* States, 955 F. Supp. 2d 759, 772 (W.D. Tex. 2013). Accordingly, the separation that forms the basis of Plaintiff's complaint was the consequence of discretionary decision-making, and Plaintiff's claims are therefore barred.

Similarly, the Complaint alleges that his minor children were detained for three and seven months (Id. ¶¶ 42-43, 45-47). As outlined above, in the exercise of its discretion, ORR makes decisions regarding the health and safety of children in the government's care and custody. *See* 6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). There is no specific deadline for release of children to custodians that is imposed by law and such discretionary decisions are the precise sort of decisions that are protected by the FTCA's discretionary function exception. *Id.*

Likewise, while Plaintiff alleges that in implementing the alleged "family separation policy" in his case, the government violated various alleged "mandatory" obligations regarding conditions of confinement under various regulations and manuals, such claims are barred for the reasons stated above because they are "inextricably intertwined" with the separation. *See Sloan v. H.U.D.*, 236 F.3d 756, 762 (D.C. Cir. 2001) (claims "inextricably tied" or "inextricably linked" to conduct protected by section 2680(a) also barred). Moreover, courts have repeatedly held that such challenges to conditions of confinement are barred by the discretionary function exception because they involve discretionary decisions.[5]

---

[5] The Complaint references conditions such as the frequency of communications between Plaintiff and his children (Id. ¶¶ 39, 45), lack of responses to requests about his children's whereabouts and wellbeing (*id.* ¶¶ 8, 30, 34, 38-39, 41, 44, 47), crowding in detention (*id.* ¶¶ 31-32), amount of food received in detention (*id.* ¶¶ 8, 32, 36), placement in solitary confinement and rare occasions granted to go outside (*id.* ¶¶ 8, 36), bedding and toilets provided (*id.* ¶¶ 31-32), and the opportunities to shower and

Indeed, a number of courts have held that conditions of confinement claims are constitutional claims that cannot be brought under the FTCA. *See Sutter v. United States*, No. 17-07245 SVW (DFM), 2019 WL 1841905, at * 4 (C.D. Cal. March 12, 2019) ("[E]ven though Plaintiff attempts to cloak his claims in terms of negligence, his [conditions of confinement] claims are constitutional tort claims and as such are not cognizable under the FTCA.") (citations omitted); *Aguilar v. United States*, No. 1:16-048, 2017 WL 6034652, at *4 (S.D. Tex. June 7, 2017) (finding that emotional distress claim arising from the conditions of confinement allegations regarding food, crowding, and sanitation at CBP detention facility were more properly characterized as a "'[c]onstitutional attack[ ] on general conditions, practices, rules, or restrictions of pretrial confinement. . . [and] the United States is not vicariously liable for constitutional torts of its officials since the United States has not waived sovereign immunity from such actions.'").

In *Peña Arita v. United States*, 470 F. Supp. 3d 663 (S.D. Tex. June 30, 2020), for example, the court dismissed FTCA claims similarly arising from the prior administration's "family separation policies." As here, plaintiffs alleged that the "family separation" practices were unlawful and challenged various associated conditions of

---

change his clothing (*id.* ¶ 32).  Courts have held that such claims are subject to discretionary decision-making involving numerous policy considerations and thus are barred by the discretionary function exception. *See, e.g., Bultema v. United* States, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database that failed to reveal immigration status protected by discretionary function exception); *Cosby v. Marshals Service*, 520 F. App'x 819, 821 (11th Cir. 2013) (detainee medical care decisions involve "several policy considerations . . . including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (discretionary function exception shielded decision to transfer prisoner to facility with allegedly inadequate medical treatment); *Antonelli v. Crow*, No. 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, barred by discretionary function exception); *Lineberry v. United* States, No. 3:08-cv-0597, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception"); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.").

confinement.  *Id.* at 686-87.  In dismissing the claims, the *Arita* court agreed with the government that the "family separation policy itself and its implementation by officers in the field are discretionary."  *Id.* at 687 ("prosecutorial judgment is a matter of choice, and obviously grounded in considerations of public policy – such as the United States Attorney General's priorities and United States Attorneys' discretion – that is intended to be shielded by the discretionary function exception.").  Accordingly, the court concluded that the challenged decision-making was "'grounded in social, economic, and policy'" considerations that the court was "without jurisdiction to second-guess." *Id.* (quoting *Gaubert*, 499 U.S. at 323). Finally, the *Arita* court held that, "to the extent Plaintiffs attempt to bring a constitutional tort claim against the United States under the Federal Tort Claims Act, or assert that the Constitution itself furnishes a nondiscretionary standard of medical care that is actionable under the FTCA in the event such care is not provided, such claim is entirely jurisdictionally barred."  *Id.* at. 688.

The Court should decline to engage in the sort of "second-guessing" and inquiry into government actors' intent in making policy decisions that the discretionary function exception was designed to prevent.  *See Berkovitz*, 486 U.S. at 536.  The Complaint alleges that federal officials targeted Central American asylum seekers, like the Plaintiff, for separation "in order to deter them from pursuing legitimate immigration claims" (Complaint ¶ 63), and that government officials "chose to inflict immense emotional pain, suffering, and trauma on parents and their young children in service of their policy objective" (*id.* ¶ 2).  *See also id.* ¶¶ 2, 6, 11, 12, 18, 19, 56, 59, 63, 64 (repeating similar allegations).

Such allegations regarding "government officials' intent or decisionmaking process" are indicative of precisely the sort of claims the discretionary function exception prohibits.  *See Lam v. United States*, 979 F.3d 665, 673 (9th Cir. 2020) ("The [discretionary function exception] is intended to prevent 'judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'") (citing *United States v. S. A. Empresa De*

1    *Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)).

2          Moreover, consistent with the FTCA provisions barring claims for constitutional

3    torts, the FTCA's discretionary function exception precludes government liability for

4    discretionary decision-making even where the government is alleged to have acted

5    unconstitutionally.  *See, e.g., Linder v. United States,* 937 F.3d 1087, 1090 (7th Cir. 2019)

6    ("the theme that 'no one has discretion to violate the Constitution' has nothing to do with

7    the Federal Tort Claims Act, which does not apply to constitutional violations").[6]

8          **C.     Plaintiff's Claims Are Barred by the FTCA's Due Care Exception**

9          Plaintiff's claims also are barred by the FTCA's "due care exception," which bars

10   "[a]ny claim based upon an act or omission of an employee of the Government, exercising

11   due care, in the execution of a statute or regulation, whether or not such statute or

12   regulation be valid."  28 U.S.C. § 2680(a).  Thus, "[w]here government employees act

13   pursuant to and in furtherance of regulations, resulting harm is not compensable under the

14   act[.]"  *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957).  *See also Accardi v.*

15   *United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim based on "enforcement of 'rules

16   and regulations'" barred by due care exception).

17          Among other things, this exception "bars tests by tort action of the legality of

18   statutes and regulations."  *Dalehite v. United States*, 346 U.S. 15, 33 (1953).  *See also* H.R.

---

[6] At the time the separation occurred here, there was no case law clearly establishing a due process right to family integrity while in immigration detention.  To the contrary, the issue was squarely addressed by the Fourth Circuit, which found that no such right exists.  *See Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019) ("[W]e . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal."); *Dominguez-Portillo*, 2018 WL 315759, at *6 (noting "lack of clearly established parental rights in these circumstances and under case law").  In addition, courts had held that separating alien parents from their citizen children through deportation did not violate the Constitution.  *E.g., Marin-Garcia Holder*, 647 F.3d 666, 674 (7th Cir. 2011) ("nothing in the Constitution prohibits" separation of citizen children from parents when parents deported); *Payne-Barahana v. Gonzales*, 474 F.3d 1, 2 & n.1 (1st Cir. 2007) ("The circuits that have addressed the constitutional issue (under varying incarnations of the immigration laws and in varying procedural postures) have uniformly held that a parent's otherwise valid deportation does not violate a child's constitutional right.").

13

Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (due care exception barred claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective"). Accordingly, where a government employee's actions are authorized by statute or regulation, the due care exception applies, and the claim must be dismissed for lack of subject matter jurisdiction.

The due care exception likewise bars Plaintiff's claims because the United States plainly had the statutory authority to determine whether and where to detain Plaintiff after he entered the country illegally, *see* 8 U.S.C. §§ 1225, 1226(a), 1231(g)(1), as well as the authority (and, indeed duty) to place his minor children in the custody and care of ORR while he was detained, *see* 8 U.S.C. §§ 1232(b)(3), 1232(c)(2)(A), 8 U.S.C. § 279(g).[7] In addition, Plaintiff's unlawful entry occurred at a time when the Executive Orders and other executive branch directives cited above instructed federal agencies to strictly enforce federal immigration statutes, including referring adult aliens for detention of adult aliens pending removal proceedings. Enforcement of immigration laws in a way authorized by statute cannot form the basis of an FTCA claim.

### D. Plaintiff's Claims Are Barred Because There Is No Private Analog

Plaintiff's claims also fail because the government acts that Plaintiff attacks have no private person analog. The FTCA requires that Plaintiff allege "circumstances where

---

[7] As noted above, the statutory UAC definition is a broad one that includes an assessment of parental fitness in determining if the parent is "available." For example, in *D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016), the court upheld the government's determination that a minor was an "unaccompanied alien child" and affirmed transfer to ORR custody even though the minor lived with the mother in their family home because the mother's lack of fitness precluded her from "provid[ing] what is necessary for the child's health, welfare, maintenance, and protection. Moreover, because the instant Plaintiff was housed in a secure facility, whether or not his children were UACs, the *Flores* Agreement precluded detention of the children in such a facility. Under *Flores*, "[DHS] must transfer the minor to a non-secure, licensed facility." *Flores*, 828 F.3d at 902-03. Thus, even if the children were not UACs, under *Flores*, the separation still would have occurred once the government exercised its discretion to detain Plaintiff in a secure detention facility.

the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.

Accordingly, the FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing liability under the FTCA." *United States v. Olson*, 546 U.S. 43, 45- 46 (2005) (internal quotations omitted). *See also Elgamal v. Bernacke*, 714 Fed. App'x 741, 742 (9th Cir. 2018) (dismissing claim for negligent denial of an immigration status adjustment application due to the lack of a private person analog)); *Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision to take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action); *McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016) ("[p]rivate persons cannot establish facilities to detain other persons – only the government can, either on its own or through a government contractor.").[8]

## E.   In the Alternative, this Action should be Transferred to the Southern District of Texas

Pursuant to 28 U.S.C. § 1402(b), an FTCA action "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."  Although Plaintiff alleges that he is domiciled in Altadena, California, Complaint ¶ 15, he does not "reside" in the Central District of California as that term of art is defined for venue purposes.  Residency, for all purposes of establishing venue, is defined by 28 U.S.C. § 1391(c)(1) which provides: that:

---

[8] To the extent Plaintiff seeks to recover for negligent infliction of emotional distress for actions that federal employees took in Texas, his complaint fails to state a claim upon which relief can be granted.  *See Verinakis v. Med. Profiles, Inc.,* 987 S.W.2d 90, 94 (Tex. App. 1998) (Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish); *Boyles v. Kerr* 855 S.W.2d 593, 597 (Tex. 1993) ("[T]here is no general duty not to negligently inflict emotional distress.").

15

> For all venue purposes- (1) a natural person, including *an alien lawfully admitted for permanent residence* in the United States, shall be deemed to reside in the judicial district in which that person is domiciled. (emphasis added).

The Supreme Court has long recognized that, for venue purposes, an alien is "assumed not to reside in the United States." *See Galveston, H. & S.A. Ry. Co. v. Gonzales*, 151 U.S. 496, 506-07 (1894).

In *Najera v. United States*, No. 16-cv-459, 2016 WL 6877069, at *6 (E.D. Va. Nov. 22, 2016), the court found that a citizen of Honduras was an alien for purposes of venue and thus his claims were improperly filed in the Eastern District of Virginia and transferred to other venues. *Id.* at *7; *see also J.P. v. Sessions*, No. LA CV1806081 JAK (SKx), 2019 WL 6723686, at *43 (C.D. Cal. Nov. 5, 2019) ("Courts have determined that non-citizens, including those who [are] not lawful permanent residents, do not reside in any district of the United States for purposes of venue.").

The instant Plaintiff has never alleged that he is now, nor has he been, lawfully admitted for permanent residency in the Central District of California. Thus, he must pursue his claims where the events occurred-- the Southern District of Texas. *See* 28 U.S.C. § 1402(b), 1406(a). In the event that the Court is not inclined to dismiss this action, the United States hereby moves to transfer this case to the Southern District of Texas.

## IV.   CONCLUSION

For the foregoing reasons, this action should be dismissed. Defendant requests that the Court dismiss Plaintiff's action without leave to amend. *See Taylor v. United States*

//
//
//
//
//
//

16

1    *v. PTO*, 551 Fed. Appx. 341 (9th Cir. 2013) (a district court does not abuse its discretion

2    by denying leave to amend a complaint when doing so would be futile).

3    Dated:   March 1, 2021          TRACY L. WILKISON
                                     Acting United States Attorney
4                                    DAVID M. HARRIS
                                     Assistant United States Attorney
5                                    Chief, Civil Division
                                     JOANNE S. OSINOFF
6                                    Assistant United States Attorney
7                                    Chief, General Civil Section
8
9                                    */s/ David Pinchas*
                                     DAVID PINCHAS
10                    -              Assistant United States Attorney
11
12                                   Attorneys for Defendant United States of America
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                          17