MARCELLUS MCRAE, SBN 140308
  mmcrae@gibsondunn.com
ABIEL GARCIA, SBN 289052
  agarcia@gibsondunn.com
DANIEL M. RUBIN, SBN 319962
  drubin@gibsondunn.com
CAROLINE MONROY, SBN 329018
  cmonroy@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

Attorneys for Oscar Enrique Nuñez Euceda

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Oscar Enrique Nunez Euceda,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>United States of America,<br><br>　　　　　Defendant. | CASE NO. 2:20-cv-10793 VAP (GJSx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**Hearing:**<br>Date:　　　April 12, 2021<br>Time:　　　2:00 PM<br>Place:　　　Courtroom 8A, First Street Courthouse<br>Judge:　　　Honorable Virginia A. Phillips |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................. 1

II. BACKGROUND ................................................................................. 2

III. LEGAL STANDARD ......................................................................... 3

IV. ARGUMENT ...................................................................................... 4

A.  Mr. Nuñez Euceda's Tort Claims Are Properly Brought Under the FTCA. ........................................................................................... 4

B.  Neither Exception to the FTCA Bars Mr. Nuñez Euceda's Suit. ......... 7

  1. The Discretionary-Function Exception Is Not Applicable Here. ............................................................................................. 7

    a.  The Government Has No Discretion to Violate the Constitution. ....................................................................... 7

    b.  The Government Cannot Violate Non-Discretionary Rules and Regulations. ...................................................... 10

    c.  The Government's Tortious Actions Were Not Grounded in Policy. .......................................................... 12

  2. The Due-Care Exception Is Also Not Applicable Here. ............... 15

C.  Private Analogues Exist for Each of the Government's Actions ............ 19

D.  Venue in the Central District of California Is Proper. ........................... 23

V.  CONCLUSION .................................................................................. 25

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:20-CV10793-VAP (GJSx)

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*A.G. Belo Corp. v. Corcoran*,
  52 S.W.3d 375 (Tex. App. 2001) ...............................................................21

*A.P.F. v. United States*,
  --- F. Supp. 3d ---, 2020 WL 8173295 (D. Ariz. July 27, 2020) ........5, 10, 16, 17, 20

*Accardi v. United States*,
  435 F.2d 1239 (3d Cir. 1970) ...................................................................17

*Alvarado v. United States*,
  2017 WL 2303758 (D.N.J. May 25, 2017)..................................................24

*Archer v. Tex. Dep't of Criminal Justice*,
  2008 WL 1735168 (Tex. App. Apr. 16, 2008)...........................................22

*Avalos-Palma v. United States*,
  2014 WL 3524758 (D.N.J. July 16, 2014) ................................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................3

*Borquez v. United States*,
  773 F.2d 1050 (9th Cir. 1985) .................................................................16

*Boyles v. Kerr*,
  855 S.W.2d 593 (Tex. 1993) ......................................................................4

*Bustamante v. Ponte*,
  529 S.W.3d 447 (Tex. 2017) ...................................................................21

*C.M. v. United States*,
  2020 WL 1698191 (D. Ariz. Mar. 30, 2020)...................................5, 9, 10, 16, 20, 22

*Carlson v. Green*,
  446 U.S. 14 (1980).....................................................................................6

*Cobb v. Tex. Dep't of Criminal Justice*,
  965 S.W.2d 59 (Tex. App. 1998) .............................................................21

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:20-CV10793-VAP (GJSx)

Gibson, Dunn &
Crutcher LLP

1
2

**TABLE OF AUTHORITIES (*continued*)**

Page(s)

3
4

*Dupree v. United States,*
   247 F.2d 819 (3d Cir. 1957) ................................................................. 15, 16

5
6

*Elgamal v. Bernacke,*
   714 F. App'x 741 (9th Cir. 2018) ................................................................. 22

7
8

*Cortez ex rel. Estate of Puentes v. HCCI-San Antonio, Inc.,*
   131 S.W.3d 113 (Tex. App. 2004) ................................................................. 22

9

*Fazaga v. FBI,*
   965 F.3d 1015 (9th Cir. 2020) ................................................................. 6, 8

10
11

*Firebaugh Canal Water Dist. v. United States,*
   712 F.3d 1296 (9th Cir. 2013) ................................................................. 19

12
13

*Flores v. Sessions,*
   2018 WL 4945000 (C.D. Cal. July 9, 2018) ................................................................. 17

14
15

*Galveston, H. & S.A. Ry. Co. v. Gonzales,*
   151 U.S. 496 (1894) ................................................................. 24, 25

16
17

*Garcia-Feliciano v. United States,*
   2014 WL 1653143 (D.P.R. Apr. 23, 2014) ................................................................. 17

18
19

*Gasho v. United States,*
   39 F.3d 1420 (9th Cir. 1994) ................................................................. 19

20
21

*Gonzalez v. United States,*
   2013 WL 942363 (C.D. Cal. Mar. 11, 2013) ................................................................. 15, 16

22

*Gu v. Napolitano,*
   2009 WL 2969460 (N.D. Cal. Sept. 11, 2009) ................................................................. 24, 25

23
24

*Hoffmann–La Roche Inc. v. Zeltwanger,*
   144 S.W.3d 438 (Tex. 2004) ................................................................. 21

25
26

*Indian Towing Co. v. United States,*
   350 U.S. 61 (1955) ................................................................. 19, 20

27
28

*In re S.K.H.,*
   324 S.W.3d 156 (Tex. App. 2010) ................................................................. 21

Gibson, Dunn &
Crutcher LLP

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:20-CV10793-VAP (GJSx)

**TABLE OF AUTHORITIES (***continued***)**

Page(s)

*J.P. v. Sessions,*
  2019 WL 6723686 (C.D. Cal. Nov. 5, 2019) ...................................................... 7, 23

*Jacinto-Castonen de Nolasco v. U.S. Immigr. & Customs Enf't,*
  319 F. Supp. 3d 491 (D.D.C. 2018) ................................................................. 9

*Linder v. United States,*
  937 F.3d 1087 (7th Cir. 2019) ....................................................................... 8

*Liranzo v. United States,*
  690 F.3d 78 (2d Cir. 2012) .......................................................................... 21

*Loumiet v. United States,*
  828 F.3d 935 (D.C. Cir. 2016) ........................................................... 8, 9, 10

*Luna v. United States,*
  2021 WL 673534 (W.D. Wash. Feb. 22, 2021) ......................................... 25

*McGowan v. United States,*
  825 F.3d 118 (2d Cir. 2016) ........................................................................ 23

*Mendia v. Garcia,*
  165 F. Supp. 3d 861 (N.D. Cal. 2016) ........................................................ 6

*Miss. Band of Choctaw Indians v. Holyfield,*
  490 U.S. 30 (1989) ...................................................................................... 25

*Ms. L v. U.S. Immigr. & Customs Enf't,*
  310 F. Supp. 3d 1133 (S.D. Cal. 2018) ....................................................... 9

*Ms. L v. U.S. Immigr. & Customs Enf't,*
  302 F. Supp. 3d 1149 (S.D. Cal. 2018) ..................................................... 15

*Najera v. United States,*
  2016 WL 6877069 (E.D. Va. Nov. 22, 2016) ............................................ 24

*Newcal Indus., Inc. v. Ikon Office Sol.,*
  513 F.3d 1038 (9th Cir. 2008) ..................................................................... 4

*Nurse v. United States,*
  226 F.3d 996 (9th Cir. 2000) ........................................................... 6, 8, 10

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:20-CV10793-VAP (GJSx)

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES** (*continued*)

2

<u>Page(s)</u>

3
4
*O'Toole v. United States*,
    295 F.3d 1029 (9th Cir. 2002) ....................................................................... 7

5
6
*Peña Arita v. United States*,
    470 F. Supp. 3d 663 (S.D. Tex. 2020) ........................................................ 11

7
8
*Peterson v. Martinez*,
    2020 WL 999832 (N.D. Cal. Mar. 2, 2020) ............................................... 14

9
*Ruiz v. United States*,
    2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) ........................................... 13

10
11
*S.E.C. v. McCarthy*,
    322 F.3d 650 (9th Cir. 2003) ...................................................................... 23

12
13
*Sabow v. United States*,
    93 F.3d 1445 (9th Cir. 1996) ................................................................ 13, 14

14
15
*Salazar v. Collins*,
    255 S.W.3d 191 (Tex. App. 2008), and (ii) ................................................. 4

16
17
*Sateriale v. R.J. Reynolds Tobacco Co.*,
    697 F.3d 777 (9th Cir. 2012) ........................................................................ 3

18
19
*SCI Tex. Funeral Servs., Inc. v. Nelson*,
    540 S.W.3d 539 (Tex. 2018) ......................................................................... 4

20
21
*Scott v. Quay*,
    2020 WL 8611292 (E.D.N.Y. Nov. 16, 2020) ...................................... 13, 14

22
*Sea Air Shuttle Corp. v. United States*,
    112 F.3d 532 (1st Cir. 1997) ...................................................................... 23

23
24
*Sloan v. H.U.D.*,
    236 F.3d 756 (D.C. Cir. 2001) .................................................................... 14

25
26
*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ...................................................................... 4

27
28
*Tekle v. United States*,
    511 F.3d 839 (9th Cir. 2007) ...................................................................... 20

Gibson, Dunn &
Crutcher LLP

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:20-CV10793-VAP (GJSx)

1

2

# TABLE OF AUTHORITIES (*continued*)

<u>Page(s)</u>

*United States v. Gaubert,*
   499 U.S. 315 (1991).........................................................................................11

*United States v. Muniz,*
   374 U.S. 150 (1963).........................................................................................20

*United States v. Olson,*
   546 U.S. 43 (2005)...........................................................................19, 20, 22

*Verinakis v. Med. Profiles, Inc.,*
   987 S.W.2d 90 (Tex. App. 1998) ......................................................................4

*Villafuerte v. United States,*
   2017 WL 8793751 (S.D. Tex. Oct. 11, 2017) .................................................21

*Welch v. United States,*
   409 F.3d 646 (4th Cir. 2005) ...........................................................................15

*Xue Lu v. Powell,*
   621 F.3d 944 (9th Cir. 2010) ...........................................................................20

**STATUTES**

8 U.S.C. § 279.........................................................................................................16

8 U.S.C. § 1182.......................................................................................................25

8 U.S.C. § 1225.......................................................................................................16

8 U.S.C. § 1226.......................................................................................................16

8 U.S.C. § 1231.......................................................................................................16

8 U.S.C. § 1232.......................................................................................................16

8 U.S.C. § 1325.......................................................................................................16

18 U.S.C. § 4042.......................................................................................................5

28 U.S.C. § 1346................................................................................................6, 22

28 U.S.C. § 1402.....................................................................................................23

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES (***continued***)**

Page(s)

28 U.S.C. § 2674 ....................................................................................... 19

28 U.S.C. § 2680 ....................................................................................... 17

Pub. L. 112-63, 125 Stat. ........................................................................ 24

**RULES**

Fed. R. Civ. P. 8 ......................................................................................... 4

Tex. R. Civ. P. 71 ....................................................................................... 4

**REGULATIONS**

8 C.F.R. § 235.4 ........................................................................................ 11

**OTHER AUTHORITIES**

Children & Family Services, *Child Placement*,
    https://dcfs.lacounty.gov/parents/child-placement/#Visitation (last visited
    Mar. 15, 2021) ...................................................................................... 5

Dep't of Justice, Evaluation & Inspections Div., Review of the Department of
    Justice's Planning and Implementation of Its Zero Tolerance Policy and Its
    Coordination with the Departments of Homeland Security and Health and
    Human Services 4–6 (Jan. 2021) ........................................................ 16

H.R. Rep. 112–10 .................................................................................... 24

Gibson, Dunn &
Crutcher LLP

## I.    INTRODUCTION

Plaintiff Oscar Enrique Nuñez Euceda and his children fled deadly violence in Honduras, risking their lives to come to the United States.  When they arrived, federal agents subjected Mr. Euceda and his children to harsh and deliberately cruel treatment. Namely, Mr. Euceda was separated from his children, one of whom was hearing impaired, immediately after being detained.  The government proclaims in its Motion to Dismiss that the United States government now has "denounced" this very practice.  For about a month after separation, government agents failed to provide Mr. Euceda with any information regarding the whereabouts of his children.  Further, officials threatened to keep him from his children, claiming he would never see his kids again unless he signed documents that were presented to him in English.  Mr. Euceda does not read or write in English.  These acts—the separation, the withholding of information, the threats of prolonged separation, the on-going harassment—along with keeping Mr. Euceda in solitary confinement, inflicted immense emotional distress.  These actions were not called for by the "Zero Tolerance Policy."  Nor were they grounded in policy considerations.  As a result, Mr. Euceda brings suit under the Federal Tort Claims Act ("FTCA"), alleging three common-law tort claims.

The government has filed a motion to dismiss, arguing Mr. Euceda has no remedy under the FTCA.  But the government mischaracterizes the basis of Mr. Euceda's claims. Contrary to the way the government seeks to frame this case, Mr. Euceda brings only his common-law tort claims.  And the government has previously acknowledged—in cases involving almost identical fact patterns—that plaintiffs seeking compensatory damages should pursue their claims under the FTCA.

Unable to thwart Mr. Euceda's tort claims by labeling them "constitutional torts," the government argues that its agents' actions are shielded from FTCA liability under the discretionary-function and due-care exceptions.  Not so.  The discretionary-function exception does not shield the government from liability because the Complaint adequately pleads (1) federal officials acted in a manner that violated Mr. Euceda's

constitutional rights, (2) federal officials' actions violated non-discretionary regulations and rules, and (3) the cruel actions taken by federal officials were carried out in a manner not grounded in any policy considerations.  And the due-care exception does not apply because the unconscionable separation was not carried out pursuant to a statutory or regulatory requirement, and agents did not carry it out with due care.

In addition, the government argues that Mr. Euceda's claims have no private analogue and therefore cannot be brought under the FTCA.  But the law is clear that the claims brought by Mr. Euceda have been brought before, in similar contexts, and do in fact have private analogues under state law.

In a last-ditch effort, the government asks this Court to transfer the case to Texas, arguing that venue is not proper.  But Mr. Euceda is domiciled in Los Angeles County, which the government does not dispute, and therefore venue is proper in this district.

Mr. Euceda has suffered tremendously at the hands of government officials.  The Complaint more than adequately pleads tort claims under the FTCA.  Accordingly, this Court should deny the government's motion, and allow this case to proceed to discovery.

## II.    BACKGROUND

In April 2018, the DOJ instituted a "Zero-Tolerance" policy requiring United States Attorneys along the Mexican border to prosecute all persons crossing between ports of entry. Dkt. 1 ("Compl.") ¶ 18.  Administration officials hoped the policy would deter migrants from seeking asylum under U.S. law. *Id.* ¶ 19.  Those high-level officials showed callous disregard for the impact of separation on families, *id.* ¶ 3, and that disregard was reflected in how border agents treated families like Mr. Euceda's.

Mr. Euceda fled Honduras in May 2018 with his two minor children—his hearing-impaired 13-year-old daughter and his 17-year-old son. Compl. ¶ 6.  They left Honduras because Mara 18 gang members repeatedly threatened, and then committed, violence against the family.  *Id.*  When Mr. Euceda arrived in the United States, immigration officers verbally abused and ridiculed him.  *Id.* ¶ 7.  Then they forcibly separated him from his young children after they were taken to a processing center known as the

*hielera*. *Id.* After being separated from his children, Mr. Euceda was transferred to the ICE Port Isabel Service Processing Center ("Detention Center") in Texas, where he was put in solitary confinement for at least 14 days. *Id.* ¶ 8. He received little food throughout the day, was rarely permitted to leave his cell, and received no information about his children's whereabouts or well-being. *Id.*

During his detention, Mr. Euceda repeatedly told officers that he wanted to apply for asylum as a result of the violence and trauma he suffered in Honduras. Compl. ¶ 33. Every time he raised the issue of applying for asylum, he was wrongly told that he was not allowed to apply. *Id.* Additionally, Customs & Border Protection ("CBP") agents attempted to force Mr. Euceda to sign a form in English, even though Mr. Euceda only understands Spanish. *Id.* ¶ 34. Those agents did not explain what the document said, and they refused to provide Mr. Euceda with a Spanish translation of the document. *Id.* Mr. Euceda refused to sign the document. *Id.* A CBP officer responded by threatening Mr. Euceda, telling him that if he did not sign he would never see his children again. *Id.*

About a month after arriving in the United States, the government deported Mr. Euceda to Honduras without providing him any information about the well-being or location of his children. Compl. ¶ 8. After his deportation, Mr. Euceda made the long journey back to the United States. This time he came alone, desperate to reunite with his children that he had been separated from months before and to seek asylum under longstanding immigration law. *Id.* ¶ 9. He was finally allowed to apply for asylum and is currently awaiting his individual hearing. *Id.*

## III.   LEGAL STANDARD

A complaint need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In resolving a motion to dismiss, a court "[c]onstru[es] the complaint in the light most favorable to the plaintiffs, and draw[s] all reasonable inferences from the complaint in the plaintiffs' favor." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 787 (9th Cir. 2012). If "there are two alternative explanations, one advanced by defendant

and the other advanced by plaintiff, both of which are plausible, [the] plaintiff's complaint survives a [Rule 12(b)(6)] motion." *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011).   At this stage, the resolution of factual questions is inappropriate. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008).

## IV.   ARGUMENT

### A.    Mr. Nuñez Euceda's Tort Claims Are Properly Brought Under the FTCA.

The government's lead contention is that "Plaintiff's claims are barred because the FTCA does not authorize recovery for constitutional torts." Dkt. 11 ("Mot.") at 6. But Mr. Euceda does not assert "constitutional torts"; he brings only *common-law tort claims*—for intentional infliction of emotional distress ("IIED"), negligence, and negligent infliction of emotional distress ("NIED").  Compl. ¶¶ 67–81.

At the outset, the government fails to grapple with the fact that Mr. Euceda has only brought tort claims, not constitutional ones, and concedes Mr. Euceda has stated claims as to IIED and negligence.[1]   Importantly, the government fails to address the multiple factual allegations in the Complaint that do not implicate constitutional rights but do underlie Mr. Euceda's claims.  For example, after taking his children, CBP officers told Mr. Euceda that he would never see them again if he did not sign papers

---

[1]   The government challenges Mr. Euceda's NIED claim (in a footnote) for failure to state a claim, arguing it is not cognizable under Texas law.  Mot. at 15 n.8 (citing *Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 94 (Tex. App. 1998), and *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993)).  Neither case specifically states mental anguish damages are not recoverable.  While *Verinakis* holds that Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish, the next sentence clarifies that "negligently inflicted anguish may be an element of recoverable damages when the defendant violates some other duty to the plaintiff." *Verinakis*, 987 S.W.2d at 90, 94–95.  In 2018, the Texas Supreme Court further clarified that "negligently inflicted mental anguish damages are recoverable" and depend on the nature of the duty breached and the sufficiency of the plaintiff's evidence. *SCI Tex. Funeral Servs., Inc. v. Nelson*, 540 S.W.3d 539, 544 (Tex. 2018). Mr. Euceda has sufficiently pleaded facts showing: (i) his claim is premised on a special relationship akin to that between jailer and inmate, *Salazar v. Collins*, 255 S.W.3d 191, 200 (Tex. App. 2008), and (ii) the breach of that duty based on separation and on-going harassment, Compl. ¶¶ 27–30, 34, 38–39.  If the Court would like, Mr. Euceda is willing to amend the title of Claim III to negligence based on a special relationship, though the substance of that claim is pleaded. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); Tex. R. Civ. P. 71 (similar).

*(Cont'd on next page)*

Gibson, Dunn &
Crutcher LLP

that he did not understand and could not read.  Compl. ¶ 34.  Additionally, although Mr. Euceda repeatedly asked about his children's care and location, the government refused to provide any information.  *Id.* ¶¶ 38–39.  These facts alone support IIED and negligence claims without implicating any constitutional rights.[2]  As to how these allegations pertain solely to a supposed "constitutional tort," the government is tellingly silent.  *See C.M. v. United States*, 2020 WL 1698191, at *4–5 (D. Ariz. Mar. 30, 2020) (denying a motion to dismiss, in part because the court refused to "parse the Complaint to assess whether claims with respect to individual factual allegations are barred," since the "extent to which certain facts could or could not prove a claim [was] outside the scope of th[e] Order; such a resolution would be premature").

Putting aside the Complaint's factual allegations that do not raise constitutional issues, the Complaint's references to certain constitutional violations by government officials do not bar recovery under the FTCA.  Indeed, as discussed further below, such allegations are central to understanding whether the discretionary-function exception applies here (it does not).  Just because government officials violated the Constitution does not negate the fact that they *also* committed torts under state law—torts on which Mr. Euceda's FTCA claims rest.  Unsurprisingly, courts in this circuit have denied the government's motions to dismiss in cases with closely analogous facts.  *See, e.g.*, *C.M.*, 2020 WL 1698191, at *5 (denying government's motion to dismiss plaintiffs' IIED and negligence claims stemming from family separation); *A.P.F. v. United States*, --- F. Supp. 3d ---, 2020 WL 8173295, at *6 (D. Ariz. July 27, 2020) (same).

The Court should reject the government's argument to the extent it asserts any action involving the possible violation of a constitutional right could only be pursued as a constitutional tort under *Bivens*.  Courts have consistently recognized the same set of

---

[2]  Mr. Euceda was denied basic information that a prison inmate or parent who lost custody of their child would receive. *See* 18 U.S.C. § 4042 (noting the duties of the Bureau of Prisons); L.A. Cnty. Dep't of Children & Family Servs., *Child Placement*, https://dcfs.lacounty.gov/parents/child-placement/#Visitation (last visited Mar. 15, 2021) (noting separated parents' "first phone call will be within 5 hours of your child being removed).

Gibson, Dunn & Crutcher LLP

facts can give rise to both constitutional claims and common-law torts—they are not mutually exclusive. *See Carlson v. Green*, 446 U.S. 14, 19–20 (1980) (noting the "FTCA and *Bivens* [are] parallel, complementary causes of action"); *Fazaga v. FBI*, 965 F.3d 1015, 1058–59, 1064–65 (9th Cir. 2020) (holding plaintiffs could pursue monetary damages through both an FTCA and *Bivens* claim); *Nurse v. United States*, 226 F.3d 996, 1005 (9th Cir. 2000) (similar). In *Nurse*, for example, the plaintiff alleged she suffered severe emotional distress after she was unlawfully stopped, arrested, and searched. 226 F.3d at 999. That plaintiff brought false arrest and negligence claims under the FTCA and "constitutional violation" claims under *Bivens*, yet the court held certain claims under both the FTCA and *Bivens* should survive dismissal. *Id.* at 1000, 1002, 1004; *see Mendia v. Garcia*, 165 F. Supp. 3d 861, 898 (N.D. Cal. 2016) (allowing immigration detainee to amend complaint to further support alleged constitutional violations and common-law tort claims, such as IIED and negligence, arising out of same set of facts). Mr. Euceda should not be foreclosed from seeking remedies under the FTCA because the government violated his common-law *and* constitutional rights.

Indeed, the government has recognized this in other Central District cases. In *J.P. v. Sessions*, it described plaintiffs' claims as seeking "compensatory damages, disguised as injunctive relief, based on alleged mental health injuries allegedly arising from their detention and separation from their children subsequent to illegally entering the United States." No. 2:18-cv-06081-JAK-SK, Dkt. 132-1 (Government's Memo. in Support of Mot. to Dismiss) at 3 (C.D. Cal. Sept. 18, 2018). In arguing for dismissal, the DOJ Civil Division attorneys argued that "Plaintiffs may have other avenues to pursue claims against the United States, including those sounding in tort. *See* 28 U.S.C. § 1346." *Id.* at 17 n.4. The government reiterated that "for actions sounding in tort against the United States, an action for money damages under 1346(b) is the *exclusive avenue available*." *Id.* at 19 (emphasis added).

The court noted this position, stating that "[a]t the hearing, the Government argued that assuming *arguendo* that Plaintiffs have viable claims, an available remedy

would be an award of damages.  Counsel noted that the Federal Tort Claims Act ('FTCA') can be the basis for a civil action against the United States for alleged intentional torts by federal law enforcement officers." *J.P. v. Sessions*, 2019 WL 6723686, at *36 (C.D. Cal. Nov. 5, 2019).  The Specialized Tort Litigation Branch of DOJ has taken this position in at least one other similar case.  *See A.I.I.L. v. Sessions*, No. 4:19-cv-00481-TUC-JAS, Dkt. 28 at 26 (D. Ariz. Feb. 14, 2020) (moving for dismissal of case arising out of family separation because "Plaintiffs also have at least a potential avenue for suit in state tort law (for anyone acting outside the scope of federal employment), and/or a suit against the United States under the [FTCA]").

Mr. Euceda asserts common-law tort claims, not "constitutional torts."  The fact that the government also violated his constitutional rights does not transform his common-law tort claims into constitutional tort claims.

**B.    Neither Exception to the FTCA Bars Mr. Nuñez Euceda's Suit.**

Contrary to the government's contention, neither the discretionary-function nor due-care exception bars this suit.  Because the FTCA should be construed liberally, the exceptions should be read narrowly.  *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002).  Here, the government forced Mr. Euceda apart from his children, and then refused to tell him where they were or whether they were safe, even when they deported him.  For the reasons explained below, the government is not immune from suit.

**1.    The Discretionary-Function Exception Is Not Applicable Here.**

For three separate reasons discussed below, the government cannot satisfy the discretionary-function exception.

**a.    The Government Has No Discretion to Violate the Constitution.**

First, the Complaint adequately alleges conduct that courts have previously found constitutes a violation of the Constitution, which the government has *no discretion* to violate.  While these allegations do *not* change the fact that Mr. Euceda has *only* brought common-law tort claims, they are central to showing that the government cannot invoke the discretionary-function exception.

Gibson, Dunn &
Crutcher LLP

In considering whether the discretionary-function exception applies, courts undertake a two-step inquiry, first looking to whether the challenged conduct involves an element of judgment or choice—*i.e.*, whether it is discretionary. *Nurse*, 226 F.3d at 1001 (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). In determining whether defendants had "no discretion" to promulgate allegedly discriminatory policies, the Ninth Circuit in *Nurse* "h[e]ld . . . that the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply." *Id.* at 1002 & n.2 (noting also that "governmental conduct cannot be discretionary if it violates a legal mandate"). As a result, the court held it "must reverse the district court's dismissal of plaintiff's FTCA claims," leaving to be "fleshed out by the facts as this case proceeds toward trial" whether the "policy-making defendants violated the Constitution." *Id.* at 1002; *see also Fazaga v. F.B.I.*, 965 F.3d 1015, 1065 (9th Cir. 2020) (recognizing that the Constitution "limit[s] the discretion of federal officials such that the FTCA's discretionary function exception will not apply").

The government cites a single out-of-circuit case—*Linder v. United States*, 937 F.3d 1087 (7th Cir. 2019)—to argue, in cursory fashion, that the discretionary-function exception precludes liability "even where the government is alleged to have acted unconstitutionally." Mot. at 13. But *Linder* is directly contradicted by binding Ninth Circuit cases cited above, and a majority of other circuits too. In *Loumiet v. United States*, for example, the D.C. Circuit considered the "question . . . whether the FTCA's discretionary-function exception shields the United States from common-law tort liability . . . even when the otherwise discretionary conduct the plaintiff challenges exceeds constitutional limits." 828 F.3d 935, 942 (D.C. Cir. 2016). That court noted that the "First, Second, Third, Fourth, Fifth, Eighth, and Ninth [Circuits], have either held or stated in dictum that the discretionary-function exception does *not* shield government officials from FTCA liability when they exceed the scope of their constitutional authority." *Id.* at 943 (emphasis added). The D.C. Circuit then joined nearly every other Circuit (including the Ninth Circuit) and held that the discretionary-

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:20-CV10793-VAP (GJSx)

Gibson, Dunn & Crutcher LLP

function exception "does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription." *Id.* at 943.

Mr. Euceda has plausibly alleged the forced separation from his children. Again, while Mr. Euceda has brought only common-law tort claims and is not seeking affirmative relief for the violation of constitutional rights, it is evident that the government's underlying conduct exceeds constitutional limits and therefore falls outside the bounds of the discretionary-function exception.[3] For example, the Complaint cites long-standing Supreme Court precedent in alleging that "the separation . . . violated the [] basic and constitutional right to family integrity." Compl. ¶ 61. Indeed, the Southern District of California held expressly in *Ms. L v. I.C.E.*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018), that the very family-separation practice imposed on Mr. Euceda likely violated the separated parents' due-process rights. Compl. ¶ 62; *see also id.* ¶¶ 63–64 (additionally alleging the practice of separating families is unconstitutional because it was motivated by discriminatory animus towards Latino immigrants and designed to impede Mr. Euceda's desire to pursue protection under U.S. immigration laws); *accord Jacinto-Castonen de Nolasco v. U.S. Immigr. & Customs Enf't*, 319 F. Supp. 3d 491, 499–500 (D.D.C. 2018) (finding that a family involuntarily separated after crossing the border "likely w[ould] succeed on their substantive due process claim premised on their constitutional right to family integrity"). In light of these adequate factual allegations, the question of whether a constitutional violation occurred cannot be disposed of on a motion to dismiss. *See C.M.*, 2020 WL 1698191, at *4 (refusing to "parse the Complaint to assess whether claims with respect to individual fact allegations are barred," because that would be "premature" on a motion to dismiss).

---

[3] The determination by the court in *Mejia-Mejia v. ICE*—that zero tolerance "amounts to [an] exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General—which the government points to, is not to the contrary. 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019). Mr. Euceda has alleged that the separation from his children violates his constitutional rights, not that government has no discretion regarding whether to prosecute him under U.S. immigration law.

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:20-CV10793-VAP (GJSx)

Gibson, Dunn & Crutcher LLP

Other *in-circuit* district courts facing motions to dismiss—courts the government here ignores—have held in cases with plaintiffs subject to the same separation practice that "[b]ecause government officials lack discretion to violate the Constitution, the discretionary-function exception cannot shield conduct related to the government's likely unconstitutional separation of plaintiffs." *A.P.F.*, 2020 WL 8173295, at *4; *C.M.*, 2020 WL 1698191, at *4 (same).[4]   While the government incorrectly mislabels Mr. Euceda's tort claims as a constitutional claims, the very fact that it adopts this posture reveals that the government views the Complaint as pleading that the offending conduct violates constitutional standards.   Consequently, any assertion that there is an insufficient basis in the Complaint to deny the application of the discretionary-function exception is unavailing.

Because Mr. Euceda has adequately pleaded actions that rise to the level of violating constitutional rights, the government cannot invoke the discretionary-function exception to elude liability.  The discretionary-function inquiry should end here.

### b.    The Government Cannot Violate Non-Discretionary Rules and Regulations.

Second, even leaving aside that Mr. Euceda has plainly alleged unconstitutional actions that preclude application of the discretionary-function exception, the government's invocation of the exception still fails because it violated non-discretionary regulations and policies.  As its name indicates, the discretionary-function exception only shields functions involving judgment or choice.  *Nurse*, 226 F.3d at 1001–02.

---

[4]   The government does not, and cannot, directly argue that Mr. Euceda has failed to allege conduct that offends constitutional principles, so instead it notes in a footnote that when the separation occurred "there was no case law clearly establishing a due process right to family integrity while in immigration detention."  Mot. at 13 n.6 (citing out-of-circuit law for the proposition).   But whether case law "clearly established" at the time that the government's actions in these circumstances were unconstitutional is a *separate question*——one the government seeks to improperly import from the qualified-immunity context—from whether the Complaint alleges actions that were in fact unconstitutional.  *See Loumiet*, 828 F.3d at 946 (rejecting the government's argument that this qualified-immunity principle "should extend to preserve discretionary-function immunity for some unconstitutional acts," because the court "found no precedent in any circuit holding as the government urges").

Gibson, Dunn & Crutcher LLP

Accordingly, courts have found that the step-one requirement of "judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz*, 486 U.S. at 536) (noting that "agency guidelines" may impose a requirement).

Here, in addition to the unconstitutional conduct, government agents violated both regulations and policies. As to the latter, CBP's policies require that it "maintain family unity to the greatest extent operationally feasible, absent a legal requirement or an articulable safety or security concern that requires separation." U.S. Customs & Border Protection, National Standards on Transport, Escort, Detention, and Search 4 (Oct. 2015). While the government may point to Executive Order 13767 and the subsequent "Zero Tolerance Memorandum" as justification for its action, Mot. at 4–5, none of the directives in the "subsequently revoked" memorandum can be said to create a legal requirement to separate Mr. Euceda from his children and then engage in ongoing cruelty by withholding of information, threatening continued separation, and participating in ongoing harassment. The Complaint sufficiently alleges that in separating Mr. Euceda from his children, and the subsequent actions taken against Mr. Euceda, the government did *not* maintain any unity to the extent operationally feasible.[5]

In addition, Mr. Euceda has alleged that immigration officials used family separation as a tool to coerce him into forgoing his immigration rights. Doing so runs afoul of federal regulations providing that an immigrant's "decision to withdraw his or her application for admission must be made voluntarily." 8 C.F.R. § 235.4; *see Gaubert*,

---

[5] The government points to *Peña Arita v. United States*, 470 F. Supp. 3d 663 (S.D. Tex. 2020)—an out-of-circuit district-court case—where the court dismissed FTCA claims arising from the practice of family separation. Mot. at 11. In *Peña Arita*, a plaintiff sought to recover damages relating to the suicide of her husband, who had been separated from plaintiff and their child. Unlike Mr. Euceda, the *Peña Arita* plaintiff argued that the prosecuting decision was not discretionary. 470 F. Supp. 3d at 683. Moreover, the *Peña Arita* court did *not* evaluate whether the government's post-separation actions pertaining to withholding information from the separated parent (*i.e.*, how the separation was carried out in practice) was grounded in policy.

Gibson, Dunn &
Crutcher LLP

499 U.S. at 316 (if an "employee violates a mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy").  Here, Mr. Euceda expressly alleged that officials "separated [him] from his children and then attempted to get him to sign forms in English that he could not understand." Compl. ¶ 65. Mr. Euceda has further alleged that he suspects these agents did that so he would sign away his rights to pursue all potential avenues of immigration relief, in fear he had to or else be permanently separated from his children.  *Id.*  For example, while at the *hielera*, CBP agents attempted to force him to sign an English-language form, although Mr. Euceda only speaks Spanish, and when he refused to sign the document one of the agents responded by threatening him, telling Mr. Euceda that "if he did not sign he would never see his children again." *Id.* ¶ 34.

At minimum, further discovery is required to properly determine any additional non-discretionary rules government officials may have violated in carrying out the actions alleged in Mr. Euceda's Complaint.  However, because government officials violated *at least* the non-discretionary rules discussed above, in addition to Mr. Euceda's constitutional rights, the government's attempt to invoke the discretionary-function exception cannot proceed past step one.

### c.    The Government's Tortious Actions Were Not Grounded in Policy.

Third, even if Mr. Euceda had not adequately alleged that the government's actions violated his constitutional rights and existing regulations and policies, the government still could not invoke the discretionary-function exception because the manner in which the separation was initially carried out, the withholding of information about his children, the threat of continued separation, and the ongoing harassment by the government were not grounded in policy.  At step two of the two-step discretionary-function inquiry, the "discretionary" decision must be "susceptible to policy analysis and thus grounded in social, economic, and political policy" in order for the exception to preclude liability under the FTCA.  These actions were not.

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:20-CV10793-VAP (GJSx)

Gibson, Dunn & Crutcher LLP

In *Ruiz v. United States*, for example, the court determined that CBP officers' treatment of a minor could not "be said to be susceptible to policy analysis" because the court could not "discern how deciding to wait fourteen hours before contacting E.R.'s parents and to only provide the child with a cookie and a soda over twenty hours could constitute a considered judgment grounded in social, economic, or political policies." 2014 WL 4662241, at *8 (E.D.N.Y. Sept. 18, 2014); *see also Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) (finding "specific acts" by military officers including "verbal abuse and a[] [retaliatory] investigation" did not involve considerations of policy and were therefore not shielded by the exception); *Scott v. Quay*, 2020 WL 8611292, at *13–14 (E.D.N.Y. Nov. 16, 2020) (noting that even an official's "laziness, carelessness, or inattentiveness" in carrying out discretionary duties are negligent acts not grounded in considerations of policy).

Here, the government's objectively "inhumane and cruel treatment of Mr. Nuñez Euceda" in carrying out the unconstitutional separation cannot be characterized as grounded in "policy" decisions—irrespective of their subject intent.   Compl. ¶ 1. Government agents at the border "inflict[ed] immense emotional pain, suffering, and trauma" on parents, including Mr. Euceda, and their young children. *Id.* ¶ 2.  After Mr. Euceda arrived in the United States, immigration officers verbally abused and ridiculed him, shortly before separating him from his young children, who cried as they were taken from their father.  Compl. ¶¶ 7, 28.  The choice to separate a child from a parent without explanation or a chance to say goodbye cannot be grounded in any policy, especially when said actions were taken while ridiculing Mr. Euceda.  For the next month—while Plaintiff was shuttled between "extremely cramped and crowded" cells or "solitary confinement," *id.* ¶¶ 31, 36—no one informed Mr. Euceda "where his children had been taken or who was caring for them," *id.* ¶ 29.  The government's choice to not provide Mr. Euceda with any information about the location or welfare of his

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:20-CV10793-VAP (GJSx)

children cannot be grounded in any policy.[6]  Indeed, although he "would ask various officials . . . about the location and safety of his children[,] [t]hose questions fell on deaf ears."  *Id.* ¶ 30.  Mr. Euceda never even received a response regarding the whereabouts and safety of his children when he was deported to Honduras.  The government fails to explain how these actions were in furtherance of any policy.

The decision not to inform Mr. Euceda where his children were after tearing the family apart was, at the very least, a result of the carelessness and inattentiveness that is not shielded under the exception, and more likely intentional.  *See Scott*, 2020 WL 8611292, at *13–14.  As was the verbal abuse.  *See Sabow*, 93 F.3d at 1454.  Discovery is necessary to confirm.  But in any event, it was not a decision grounded in policy.

Moreover, contrary to the government's suggestion, the acts here alleged—for example, the withholding of information regarding Mr. Euceda's children—was in no way a necessary result of or "inextricably intertwined" with the separation, but instead constituted an unnecessary act of cruelty *on top of* the separation itself.  *Sloan v. H.U.D.*, 236 F.3d 756, 762 (D.C. Cir. 2001).  No policy excuses the intentionally cruel and wholly unnecessary manner in which the separation of Mr. Euceda from his children was carried out.  And as a result, even if this Court's discretionary-function inquiry proceeds past step one, the government still cannot evade liability for these actions.

*       *       *

Government agents ran afoul of non-discretionary legal mandates and acted in a manner that cannot reasonably be characterized as grounded in policy.  Most importantly, the government never has the discretion to violate the constitution, which

---

[6]  Even if FTCA claims based solely on confinement conditions are generally not allowed, Mr. Euceda's claims are not solely based on his confinement conditions.  Indeed, the Complaint adequately alleges different tortious acts going beyond his confinement that form the basis of his FTCA claims.  At a minimum, Mr. Euceda's conditions of confinement are a context within which the totality of actions alleged in the complaint, which are more than capable of inducing emotional distress, can be assessed.  *Peterson v. Martinez*, 2020 WL 999832, at *8 (N.D. Cal. Mar. 2, 2020) (holding that inmate placement and management decisions "could be removed from the protection of the discretionary function exception" if those decisions were shown to be retaliatory or otherwise not in fact policy driven).

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:20-CV10793-VAP (GJSx)

Gibson, Dunn & Crutcher LLP

another court in this circuit has found the government to have done in separating Mr. Euceda from his children. *Ms. L v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149, 1167 (S.D. Cal. 2018) (noting that separating parents from their children and government's conduct in separating families "shocks the conscience" and "violates Plaintiffs' constitutional right to family integrity"). Accordingly, its attempt to use the discretionary-function exception to escape liability under the FTCA fails.

### 2.    The Due-Care Exception Is Also Not Applicable Here.

While the government contends the due-care exception bars Mr. Euceda's FTCA claim, that argument does not withstand scrutiny. Courts evaluating whether the due-care exception undertake a two-step inquiry. A court must first determine whether a "statute or regulation" prescribes or mandates a course of action for an officer to follow. *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005); *Gonzalez v. United States*, 2013 WL 942363, at \*3 (C.D. Cal. Mar. 11, 2013) (applying the *Welch* test and holding plaintiff's tort claims based on prolonged detention were not barred). At the second step, "if a specific action is mandated, [courts] inquire as to whether the officer exercised due care following the dictates of that statute or regulation." *Id.* Because the government cannot satisfy either factor in the due-care exception test, it cannot invoke the due-care exception to bar Mr. Euceda's claims.

First, the government does not, and cannot, identify any statute or regulation that mandates that Mr. Euceda be detained or separated from his children. Instead, the government repeatedly argues the "United States plainly *had the statutory authority* to determine whether and where to detain Plaintiff." Mot. at 14 (emphasis added). But whether the United States had the *authority* to detain Mr. Euceda is a separate question from whether that action was *mandated* by statute or regulation. The government must show a statute or regulation mandated the separation and the subsequent actions. And while the government may contend that *Dupree v. United States* holds only that government employees must, at step one, "act pursuant to and in furtherance of regulations," 247 F.2d 819, 824 (3d Cir. 1957), that is *not* the standard applied by district

courts in this circuit.  *See Gonzalez*, 2013 WL 942363, at *3 (C.D. Cal. Mar. 11, 2013); *A.P.F.*, 2020 WL 8173295, at *3 (noting the court would "[f]ollow[] other courts in this circuit" by "app[ying] the two-prong test established by *Welch*," including its step-one "mandate" requirement, and citing courts to have done so).[7]  Indeed, the *A.P.F.* court expressly held that the due-care exception applies only when an official "executes the mandates" of a statute or regulation.  *Id.*; *see also C.M.*, 2020 WL 1698191, at *5–6 (same).

None of the statutory provisions that the government points to—*i.e.*, 8 U.S.C. §§ 1225, 1226(a), 1231(g)(1), 1232(b)(3), 1232(c)(2)(A), 279(g)—is to the contrary. *See* Mot. at 14.  In addition, the very existence of the "Executive Orders and other executive branch directives . . . instruct[ing] federal agencies to *strictly enforce* federal immigration statutes" suggests there was no such statutory or regulatory mandate.  *Id.* (emphasis added).  Had the government's actions here been required under § 1325(a), the "Zero Tolerance Memorandum"—which directed federal authorities to *prosecute all* adult aliens including those travelling with children, who entered the United States between ports of entry—would not have been necessary in the first place.  *See* Mot. at 5; *see also* 8 U.S.C. § 1325(a) (allowing the imposition of "fine[s]" *or* "imprisonment").[8] Moreover, had the dictates of the executive order and zero-tolerance policy been

---

[7] The court in *Borquez v. United States*, 773 F.2d 1050 (9th Cir. 1985), did not speak to whether the step-one "mandate" requirement from the later-decided *Welch* case applies.  *Borquez* only provided that the due-care exception bars tests by tort action of the legality of statutes and regulations—a challenge Mr. Euceda does not bring here—and evaluated whether due care was in fact used.  773 F.2d at 1052.  As to the latter, Mr. Euceda explains that there can be no serious question that government border agents did not exercise due care in separating Mr. Euceda from his children.

[8] *See* Dep't of Justice, Evaluation & Inspections Div., Review of the Department of Justice's Planning and Implementation of Its Zero Tolerance Policy and Its Coordination with the Departments of Homeland Security and Health and Human Services 4–6 (Jan. 2021) (noting that the U.S. Attorney may decline to prosecute for illegal entry, and that before the zero-tolerance policy, DHS "typically would detain and administratively remove the adults and children together under civil immigration proceedings or would provide the family unit adult with a Notice to Appear before an Immigration Judge and then release the family to remain in the United States" until the immigration hearing date).

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:20-CV10793-VAP (GJSx)

Gibson, Dunn & Crutcher LLP

1    statutorily mandated, they could not have been "subsequently revoked" as the

2    government concedes they were.  Mot. at 9.

3         In addition, the government cannot rely on the requirements of the zero-tolerance

4    memorandum to justify its actions here, as that *policy* is neither a "statute" nor

5    "regulation."  As the government itself, Mot. at 13, and the cases it cites to note, *see,*

6    *e.g.*, *Accardi v. United States*, 435 F.2d 1239, 1241 n.3 (3d Cir. 1970), the plain language

7    of the relevant section provides that the due-care exception may apply only where a

8    claim is based on a government employee's act in the "execution of a statute or

9    regulation."  28 U.S.C. § 2680(a).  That is why the *A.P.F.* court held that "[a]ctions taken

10   pursuant to executive policy are *not shielded* by the due care exception."  2020 WL

11   8173295, at *3 (emphasis added).  Because "family separations were conducted pursuant

12   to executive policy, *not* pursuant to any statute or regulation," the due-care exception

13   does not apply.  *Id.* (emphasis added); *see also Garcia-Feliciano v. United States*, 2014

14   WL 1653143, at *4 n.8 (D.P.R. Apr. 23, 2014) (holding the due-care exception "would

15   not apply . . . because a policy—not a statute or regulation—pr[e]scribed the deputy's

16   conduct").

17        Furthermore, the government's claim that it had a "duty" to place Mr. Eueeda's

18   children in ORR custody while he was detained is incorrect and irrelevant to the due-

19   care exception inquiry.  Mot. at 14.  As an initial matter, nothing in the *Flores* Agreement

20   granted the government the right to make custody determinations about Mr. Eueeda's

21   children.  *Flores v. Sessions*, 2018 WL 4945000, at *4 (C.D. Cal. July 9, 2018)

22   ("[D]etained parents may choose to exercise their *Ms. L* right to reunification or to stand

23   on their children's *Flores* Agreement rights.  Defendants may not make this choice for

24   them.").  In addition, the *Flores* Agreement that the government points to as mandating

25   the separation is neither a statute nor a regulation.  And more fundamentally, although

26   the government argues that *Flores* "precluded detention of the children" in the "secure

27   facility" in which Mr. Eueeda was held, Mot. at 14 n.7, it fails to mention that he was

28   only in that facility as the result of the government's zero-tolerance policy, which was

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:20-CV10793-VAP (GJSx)

not mandated by statute or regulation.  Because the detention and separation of Mr. Eueeda was not required by either statute or regulation, the government cannot invoke the due-care exception.

Second, even if the Court determines (it should not) that a statute or regulation mandated Mr. Euceda's detention, and thus the separation from his children via *Flores*, the government could only invoke the due-care exception if its officers exercised due care in following the dictates of that statute or regulation.  They did not.

The government itself does not argue otherwise in its motion, and instead only contends in cursory fashion that "[e]nforcement of immigration laws in a way authorized by statute cannot form the basis of an FTCA claim."  Mot. at 14.  That not only misstates the step-one inquiry (whether action was "mandated" by statute or regulation), but also completely ignores step two (whether due care was exercised).

As explained above, members of the "government, from the most senior administration officials to agents stationed at the border, chose to inflict immense emotional pain, suffering, and trauma on parents and their young children," including Mr. Euceda.  Compl. ¶ 2.  And as amply alleged in the Complaint, they were successful in doing so.  When Mr. Euceda arrived in the United States, immigration officers verbally abused and ridiculed him shortly before separating him from his young children, who cried as they were taken from their father.  *Id.* ¶¶ 7, 28.  Then, while Mr. Euceda was moved from "extremely cramped and crowded" cells into "solitary confinement," *id.* ¶¶ 31, 36, officials refused to inform Mr. Euceda "where his children had been taken or who was caring for them," *id.* ¶¶ 29, 39, even though he repeatedly asked for that information, *id.* ¶ 30.  Even as he was being deported, Mr. Euceda never received a response regarding the whereabouts and safety of his children.  *Id.* ¶ 8.

Because Mr. Euceda's detention and subsequent separation from his children was not carried out with due care—an unsurprising result given the callous and vindictive goals of the government's objectives, *see* Compl. ¶¶ 3, 19—the government cannot hide behind the due-care exception for this additional reason.  The government flunks both

parts of the two-step due-care exception test, and it therefore cannot point to the due-care exception to bar the FTCA claims here.

## C.   Private Analogues Exist for Each of the Government's Actions.

The government also erroneously contends it cannot be held liable under the FTCA because there is no private-actor analogue.  The government's two-paragraph argument contains no analysis of the facts and simply recites case law from multiple districts.

The Supreme Court has made clear that the private-analogue doctrine, which provides that the United States is liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, must be interpreted broadly.  *See Indian Towing Co. v. United States*, 350 U.S. 61, 68–69 (1955).  The FTCA's requirement that a claim address "*like* circumstances" does not mean "under the *same* circumstances," *id.* at 64 (emphasis added); rather, courts must look "further afield" to find analogous torts relating to the government activity at issue, *United States v. Olson*, 546 U.S. 43, 46 (2005); *see also Firebaugh Canal Water Dist. v. United States*, 712 F.3d 1296, 1303 (9th Cir. 2013) (private analogue need not be "exactly on point" because it need only be "appropriate").  Here, the Complaint pleads facts sufficient to state a claim for liability against a private actor under the relevant common law.

First, courts in this district, and the Ninth Circuit, have accepted that IIED claims can be sustained where federal agents' actions were motivated by malice.  *See Gasho v. United States*, 39 F.3d 1420, 1434 (9th Cir. 1994) (finding plaintiffs could bring a separate tort claim based on an arrest if the arrests were motivated by malice); *C.M.*, 2020 WL 1698191, at *2; *A.P.F.*, 2020 WL 8173295, at *3.  Mr. Euceda's complaint has properly alleged that the federal agents' actions were motivated by malice and with animus against him.  Compl. ¶ 63.  With respect to negligence, courts have similarly recognized that federal employees handling detainees have a duty to treat them with a minimum level of care.  *See generally Flores v. Sessions*, No. 2:85-CV-4544, Dkt. 101 (C.D. Cal. Feb. 2, 2015) (discussing the *Flores* Agreement).

Next, to the extent the government's argument is premised on the unique ability of the federal government to act in certain areas, the Supreme Court has already "rejected the government's contention that there was 'no liability for negligent performance of 'uniquely governmental functions.'"  *Olson*, 546 U.S. 46 (citing *Indian Towing*, 350 U.S. at 64).  It has long been settled law that the United States can be liable for activities over which the federal government has exclusive authority.  *Indian Towing*, 350 U.S. at 69–70 (holding that theUnited States could be liable for Coast Guard's failure to maintain a lighthouse, despite the government's exclusive authority over such operations); *see Tekle v. United States*, 511 F.3d 839, 852 (9th Cir. 2007) ("Even if the conduct entails uniquely governmental functions, the court is to examine the liability of private persons in analogous situations.").  The Supreme Court has specifically held that a person can "sue under the [FTCA] to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." *United States v. Muniz*, 374 U.S. 150, 150–51 (1963).

In the immigration context, courts allow FTCA claims to proceed even when the actions of immigration officers are uniquely governmental.  In *Xue Lu v. Powell*, 621 F.3d 944, 947–50 (9th Cir. 2010), for example, the Ninth Circuit rejected the government's private-analogue defense and allowed plaintiffs' IIED claim to survive dismissal where an asylum officer conditioned outcomes in the plaintiffs' immigration proceedings on satisfaction of demands for money and sexual favors.  *Xue Lu* thus forecloses the government's theory that immigration enforcement lacks a private analog. *See also Liranzo v. United States*, 690 F.3d 78, 80–81, 94–95 (2d Cir. 2012) (false arrest and imprisonment claims were viable where government erroneously detained plaintiff in immigration custody because private analogue in state tort law allowed claims against private individuals for detention without "legal privilege to do so"); *Avalos-Palma v. United States*, 2014 WL 3524758, at *11–12 (D.N.J. July 16, 2014) (private-analogue doctrine did not bar claims arising from wrongful deportation).

Regardless, private analogues can be found in Texas state law for the heinous actions undertaken by the government.  Mr. Euceda alleges injuries stemming from the purposeful and forcible separation from his children by government agents, as well as the government's refusal to subsequently communicate their whereabouts and condition, all in an effort designed to cause mental anguish.  *See* Compl. ¶¶ 24–45.  Texas courts have allowed IIED suits in analogous situations.  In *Villafuerte v. United States*, for example, the plaintiff was allowed to bring an IIED for mental anguish suffered while being detained in CBP custody.  2017 WL 8793751, at *13 (S.D. Tex. Oct. 11, 2017) ("Although IIED has been recognized first and foremost as a 'gap-filler' tort, the tort is available to allow recovery." (citing *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004))).  Similarly, in *In re S.K.H.*, a mother was able to recover for an IIED claim against her parents, who took her child and did not disclose the child's location.  324 S.W.3d 156, at 158–59 (Tex. App. 2010); *see also A.G. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 383–84 (Tex. App. 2001).

Texas courts have also allowed similar claims based on negligence.  In *Bustamante v. Ponte*, the Texas Supreme Court heard a negligence claim against a doctor and hospital that allegedly negligently mistreated a premature infant in their care.  529 S.W.3d 447, 450–51 (Tex. 2017).  In *Cobb v. Texas Department of Criminal Justice*, an inmate brought negligence claims against the department as well as two employees, alleging that the defendants had been negligent in maintaining the conditions of the butcher shop and acted in bad faith and reckless disregard for his welfare.  965 S.W.2d 59, 63 (Tex. App. 1998).  In *Archer v. Texas Department of Criminal Justice*, an inmate was allowed to bring negligence claims against three department employees for negligent training and supervision.  2008 WL 1735168, at *4 (Tex. App. Apr. 16, 2008).

The authorities the government relies on are distinguishable or inapplicable.  In *Olson*, the Court remanded the case to the lower courts to determine which Arizona tort laws applied to a mining accident, stating that FTCA only "waives sovereign immunity 'under circumstances where the United States, if a *private person*,' not 'the United States

OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:20-CV10793-VAP (GJSx)

Gibson, Dunn & Crutcher LLP

1   if a state or municipal entity,' would be liable."  546 U.S. at 45–46 (quoting 28 U.S.C.

2   § 1346(b)(1)).  The Court stated the private-analogue requirement does "not restrict a

3   court's inquiry to the *same circumstances*, but require[s] it to look further afield."  *Id.* at

4   46.  Analyzing the fact pattern before it, the Court found that the federal mine inspector

5   had analogous private persons, "namely, private persons who conduct safety

6   inspections."  *Id.* at 47 (quotation marks omitted).  Courts in this district, analyzing

7   almost the same set of facts, have found analogous situations, likening the manner of the

8   separation and subsequent lack of information to a nursing facility employee who "is

9   tasked with the care of persons who are dependent upon them to make daily housing and

10  safety determination."  *C.M.*, 2020 WL 1698191, at *2 (citation omitted).

11          The government also cites the non-precedential decision, *Elgamal v. Bernacke*, in

12  which the Ninth Circuit stated in one sentence, without analysis or a factual background,

13  that "because no private person could be sued for anything sufficiently analogous to the

14  negligent denial of an immigration status adjustment application, that claim must be

15  dismissed as well."  714 F. App'x 741, 742 (9th Cir. 2018).  This position is not

16  analogous to Mr. Euceda's factual allegations as the case here does not involve the denial

17  of a federally granted immigration status.  Rather, Mr. Euceda's situation is analogous

18  to private persons inflicting distress on nursing home residents or persons in their care.

19  *See Cortez ex rel. Estate of Puentes v. HCCI-San Antonio, Inc.*, 131 S.W.3d 113, 120–

20  21 (Tex. App. 2004) (finding an issue of fact as to whether a nursing home employee

21  intentionally or recklessly caused deceased resident emotional distress through his

22  harassment).  The remaining cases cited by the government are similarly distinguishable

23  since the facts in each case are rooted in specific and unique government functions or

24  the alleged torts are specific to government functions.  *Sea Air Shuttle Corp. v. United*

25  *States*, 112 F.3d 532, 537 (1st Cir. 1997) ("The controversy here wholly concerns the

26  FAA's alleged failure to perform its regulatory functions vis a vis an entity that is out-

27  of-compliance with federal laws and rules.  Its sole obligation in enforcing the exclusive

28  lease prohibition is to cut off federal funding."); *McGowan v. United States*, 825 F.3d

118, 126–27 (2d Cir. 2016) (finding that the tort of wrongful confinement lacks a private analogue since private persons cannot establish prison facilities).  Mr. Euceda's IIED and negligence claims seek remedy for actions that stem from the government's treatment of him while in their custody, which has been found to have private analogues by courts in this Circuit and others.  The government's position should be rejected as case law demonstrates sufficient private analogues for the conduct Mr. Euceda alleges.

## D.    Venue in the Central District of California Is Proper.

The government argues in the alternative that the Court should transfer this case to Texas.  Transfer is unnecessary and improper.  FTCA actions may be prosecuted "where the plaintiff resides."  28 U.S.C. § 1402(b).  Under 28 U.S.C. § 1391(c)(1), "a natural person . . . shall be deemed to reside in the judicial district in which that person is domiciled."  Section 1391(c)(1) is not limited in its application to citizens and lawful permanent residents.  Rather, it unambiguously applies to all "natural persons" domiciled in the United States, including aliens who seek asylum here.  The government does not contend that aliens such as Mr. Euceda are not natural persons.  Therefore the Court should reject the government's attempt to contort the plain language of the statute to fit the government's desired, and more restrictive, interpretation.  *S.E.C. v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003) ("The plain meaning of a statute is always controlling 'unless that meaning would lead to absurd results.'").

Indeed, courts both in and outside this district have rejected the government's argument.  *J.P.*, 2019 WL 6723686, at *43 ("Defendants first contend that, because Plaintiffs are noncitizens who are not lawful permanent residents of the United States, venue cannot be established under subsection (C).  This argument is not persuasive."); *Alvarado v. United States*, 2017 WL 2303758, at *2–3 (D.N.J. May 25, 2017) ("[D]omicile, regardless of LPR status, governs an individual's ability to establish residence, and therefore venue."); *Gu v. Napolitano*, 2009 WL 2969460, at *1 (N.D. Cal. Sept. 11, 2009) (similar).

1    The Government cites *Najera v. United States*, 2016 WL 6877069 (E.D. Va. Nov.

2    22, 2016), for support, but this case ignores the unambiguous language of § 1391(c)(1).

3    The court cites legislative intent and history to overcome the statute's express language

4    and concludes that the Federal Courts Jurisdiction and Venue Clarification Act of 2011

5    ("Act") simply added lawful permanent residents ("LPR(s)") as "one specific subset of

6    aliens to Section 1391(c)(1)." *Najera*, 2016 WL 6877069, at *6. But the Act did more

7    than tweak a pre-existing venue rule—it adopted a generally applicable venue rule that

8    all natural persons reside where they are domiciled. Pub. L. 112-63, 125 Stat. at 763

9    (striking and replacing prior statute). The legislative history also supports this reading

10   as Congress did not distinguish between the statute's application to LPRs and non-

11   citizens without LPR status. *Alvarado*, 2017 WL 2303758, at *3 (citing H.R. Rep. 112–

12   10). Nor does "history" require a different conclusion—in 2009, *Gu v. Napolitano*

13   considered the application of § 1391(e)(3)'s similar, unambiguous provision to non-

14   citizens and concluded that even if the court went beyond the unambiguous statutory

15   language, the Supreme Court, the Ninth Circuit Court of Appeals, and other circuit

16   courts had never held that aliens cannot establish residence for the purposes of venue.

17   *Gu*, 2009 WL 2969460, at *2 ("[T]he closest circuit court opinion . . . [actually held]

18   that 'a resident alien taxpayer may establish venue under 28 U.S.C.A. § 1402(a)(1) for

19   the purposes of contesting a jeopardy assessment.'").

20   The government's reliance on *Galveston, H. & S.A. Ry. Co. v. Gonzales*, 151 U.S.

21   496 (1894), is also unavailing because nothing in that case precludes a non-citizen from

22   establishing domicile or residence in the United States. In *Galveston*, a non-citizen

23   attempted to sue a railroad in the Western District of Texas based on the fact that the

24   railroad operated and maintained offices and depots in that district. *Id.* at 499. The

25   Court considered whether venue was proper based on the inhabitancy of the defendant,

26   and the plaintiff's citizenship status "ma[d]e no difference" in the analysis. *Id.* at 506;

27   *accord Gu*, 2009 WL 2969460, at *2 ("Nothing in that case precludes an alien from

28   establishing that he or she does in fact reside in the United States.").

Venue is proper since this is the place of Mr. Euceda's domicile. The government concedes Mr. Euceda has alleged domicile here. Mot. at 15. Domicile is "established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). Mr. Euceda was counted among the parents wrongfully separated from his children in the *Ms. L* litigation, *see* Compl. ¶¶ 4–5, 60, was permitted to return to the United States, and now has a pending asylum application, *id*. ¶ 9, which shows his lawful presence and intent to remain here. The government does not dispute that Plaintiff is domiciled in this district, and objects only that Plaintiff has never alleged that he is "lawfully admitted for permanent residency." Mot. at 15–16. But this is not the applicable standard. Even if it were, Mr. Euceda is lawfully present to seek asylum and has formed an intent to remain. 8 U.S.C. § 1182(a)(9)(B)(iii)(II); *Luna v. United States*, 2021 WL 673534, at *2 (W.D. Wash. Feb. 22, 2021) (lawful presence and intent to stay support residence). Therefore, the action should not be dismissed or transferred.

## V.    CONCLUSION

As the Attorney General recently said, family separation was "shameful." In choosing to cruelly separate Mr. Euceda from his children, and then to withhold information about his children, government agents committed a number of common-law torts for which the United States is now liable under the FTCA. Accordingly, this Court should deny the government's motion to dismiss and reject its alternative request to transfer. Alternatively, if the Court is inclined to grant the government's motion, Mr. Euceda requests leave to amend the Complaint.

Gibson, Dunn &
Crutcher LLP

25

1   Dated:  March 15, 2021

2                                    MARCELLUS MCRAE
                                     ABIEL GARCIA
3                                    DANIEL RUBIN
                                     CAROLINE MONROY
4                                    GIBSON, DUNN & CRUTCHER LLP

5

6                                    By: */s/ Marcellus McRae*
                                          Marcellus McRae
7

8                                    Attorneys for Oscar Enrique Nuñez Euceda

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26
OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:20-CV10793-VAP (GJSx)