TRACY L. WILKISON
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
DAVID PINCHAS (Cal. Bar No. 130751)
TALYA M. SEIDMAN[1]
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2920
    Facsimile: (213) 894-7819
    E-mail: David.Pinchas@usdoj.gov
          Talya.Seidman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| OSCAR ENRIQUE NUNEZ EUCEDA,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 2:20-cv-10793-VAP-(GJSx)<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Honorable Virginia A. Phillips |

---

[1] Admitted to practice under Local Rule 83-2.1.4.1. *See* Order, *In Re Application Of Talya M. Seidman For Admission Pursuant To Local Rule 83-2.1.4.1*, C.D. Cal. No. 2:20-CM-00215-PSG (Nov. 9, 2020).

## INTRODUCTION

In response to Plaintiff's Opposition (the "Opposition" or "Opp'n") to the United States of America's motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted (the "Motion"), Defendant United States hereby submits this reply.

In an attempt to circumvent the exceptions to the Federal Tort Claims Act ("FTCA"), which deprive the Court of subject matter jurisdiction over some or all of Plaintiff's claims, the Opposition conflates Plaintiff's claim for separation from his children, due to his detention for unauthorized entry into this country, with his claims of alleged post-separation treatment by governmental officials. *See, e.g.,* Opposition at 11-14, 19 & n. 6. This reply brief will distinguish Plaintiff's claims and demonstrate that the Court lacks subject matter jurisdiction over this action and that Plaintiff has failed to state a claim upon which relief can be granted.

## II. ARGUMENT

### A. Plaintiff's Separation Claims are not Actionable Under the FTCA.

#### 1. The Court Lacks Jurisdiction Pursuant to the Discretionary Function Exception

As noted in the Motion, Congress has authorized the federal government to detain individuals who enter the country without authorization, *see* 8 U.S.C. §§ 1225, 1226(a), and to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). These detention decisions necessarily involve discretion. *See* Motion at 2. Thus, the Court lacks subject matter jurisdiction under the FTCA's discretionary function exception, 28 U.S.C. § 2680(a), over Plaintiff's claims arising out of the government's threshold decision to detain Plaintiff, and where and with whom to detain, regardless of Plaintiff's characterization of such claims. This exception to the Court's jurisdiction applies even if Plaintiff contends that the discretion was abused. *Id.*

1   Plaintiff appears to admit that the government had discretion to prosecute him.
2   Opposition at 9 & n. 3.  But the premise of the Complaint is that the United States
3   was *required* to release him from detention because he entered the United States
4   without authorization with his children.  Plaintiffs identify no statute, regulation, or
5   policy that mandated his release.  Accordingly, Plaintiffs' premise is incorrect and
6   should be rejected by this Court.

   Next, Plaintiff argues that the government violated a Customs and Border
Protection ("CBP") policy to "maintain family unity to the greatest extent
operationally feasible." Opp'n at 11. The plain language of this policy explicitly
grants the government discretion, using the permissive language of "to the greatest
extent *operationally feasible*".  In order to overcome the discretionary function
exception, and to meet his burden of establishing the Court's subject matter
jurisdiction, Plaintiff must identify a statute, regulation or policy setting forth a course
of conduct that is both *mandatory and specific*, as well as conduct that violates said
mandatory and specific statute, regulation, or policy.  *See Doe v. Holy See*, 557 F.3d
1066, 1084 (9th Cir. 2009), *cert. denied*, 561 U.S. 1024 (2010). The CBP policy
merely guides officials to utilize their discretion in a way that is most "operationally
feasible."

   Furthermore, the Ninth Circuit's *Flores* consent decree "does not contemplate
releasing a child to a parent who remains in custody, because that would not be a
'release.'"  *Flores v. Lynch*, 828 F.3d 898, 906 (9th Cir. 2016); *see also United States
v. Dominguez-Portillo*, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*]
does not provide that parents are entitled to care for their children if they were
simultaneously arrested by immigration authorities[.]").  Nor does the *Flores* consent
decree provide any rights to adult detainees, including any rights of release.  *Flores*,
828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-16; *Bunikyte,
ex rel. Bunikiene v. Chertoff*, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007).

While the *Flores* consent decree gives preference for the release of a minor to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908. Accordingly, the *Flores* consent decree does nothing to change the federal statutory requirements that noncitizen minors be transferred to the custody of the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") and placed in the "least restrictive" setting when their parents are detained by immigration authorities. *Id.* at 904. Under federal law and the *Flores* consent decree, such children cannot be held in adult detention facilities. Thus, far from prohibiting separation, once an adult noncitizen is detained, the law essentially requires it. As one court explained:

> Though family unification is a stated goal of both the *Flores* Settlement and U.S. immigration policy generally, nothing in the settlement agreement expresses a preference for releasing parents who have violated immigration laws. In fact, the context of the *Flores* Settlement argues against this result: the Settlement was the product of litigation in which unaccompanied minors argued that release to adults other than their parents was preferable to remaining in custody until their parents could come get them.

*Bunikyte*, 2007 WL 1074070, at *16.

With respect to the second prong of the discretionary function exception test, it is well-established that decisions regarding whether, where, and with whom noncitizens are detained are susceptible to policy considerations. *See* Motion at 11-13; *see also Ayala v. United States,* 982 F.3d 209, 215 (4th Cir. 2020) ("[i]n deciding whom to investigate, detain, and then remove, DHS officers must make all the kinds of classic judgment calls the discretionary function exception was meant to exempt from tort liability."); *id.* at 217 (enforcement decisions are based on "the need for

3

effective enforcement of immigration policy--a policy which touches upon vital national interests in law enforcement at the borders."). The conclusion that decisions to detain noncitizens who enter without authorization are susceptible to policy considerations is especially valid here, where the decision-making implicates not only law enforcement and border security considerations, but also considerations of child safety and welfare.

In *Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000),[2] the Ninth Circuit recognized the possibility of the discretionary function exception applying, notwithstanding the fact that the conduct at issue is subsequently determined to have violated the Constitution. *Id.* at 1002 n.2. Further, the constitutional provision allegedly violated must have a requisite degree of specificity to overcome the discretionary function exception. *Id.*; *see also Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. 2005) (holding that the Eighth Amendment's prohibition against cruel and unusual punishment did not define a non-discretionary course of action "specific enough to render the discretionary function exception inapplicable").

Plaintiff's assertion of a due process violation similarly lacks specificity, because determining whether due process has been violated involves an evaluation of the totality of the circumstances, rather than an application of a clear and fixed standard. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998); *Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998). In addition, to the extent Plaintiff argues that the separation was due to negligence, the law is settled that negligence cannot violate the due process clause of the Constitution. *See Daniels v. Williams*, 474 U.S. 327, 331-32 (1986); *Francis v. California*, 303 Fed. Appx. 427, 429 (9th

---

[2] Plaintiff cites *Nurse* for the proposition that an FTCA complaint which alleges unconstitutional conduct may not be dismissed by motion and must proceed to discovery. Opp'n at 8. The complaint in *Nurse* contained only "bare allegations" of unlawful and discriminatory policies. *Id.* at 1000, 1002. Accordingly, *Nurse* was decided under lax pleading standards that were later rejected by the Supreme Court in *Aschroft v. Iqbal,* 556 U.S. 662, 679 (2009) *and Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009).

Cir. 2008).³  Accordingly, Plaintiff's separation claim is barred by the FTCA's discretionary function exception.

### 2. Plaintiff's Claims Are Barred by the Due Care Exception

Furthermore, once the discretionary decision was made to charge Plaintiff and he was securely detained, his children were rendered unaccompanied alien children pursuant to 6 U.S.C. § 279(g)(2), and federal law required CBP to transfer custody of his children to ORR not later than 72 hours after Plaintiff's detention in a secured facility. *See* 8 U.S.C. § 1232(b)(3). Therefore, the separation challenged by Plaintiff is covered by the FTCA's due care exception, 28 U.S.C. § 2680(a), which expressly deprives the Court of subject matter jurisdiction even if Plaintiff contends that statutory scheme is invalid.

Plaintiff relies on the Fourth Circuit's decision in *Welch v. United States*, 409 F.3d 646 (4th Cir. 2005), in arguing that the FTCA's due care exception only applies where a statute or regulation *requires* certain conduct. But the Ninth Circuit has found that the due care exception bars claims where the governmental action was "authorized" by law, not because a statute *mandated* the specific harm alleged. *Borquez v. United States*, 773 F.2d 1050, 1052 (9th Cir. 1985). In any event, here, the TVPRA *required* Defendant to transfer custody of Plaintiff's children to ORR once the discretionary decision was made to detain Plaintiff in a secured facility where minors cannot be held. *See* Motion at 2-4 & 15. Even if, as Plaintiff argues,

---

³ Although Plaintiff argues that it is irrelevant whether the asserted constitutional violation was clearly established, Opp'n at 10 & n. 4 (citing *Loumiet v. United States*, 828 F.3d 935, 942 (D.C. Cir. 2016)), the *Loumiet* court expressly reserved judgment on that issue, stating that it "would leave for another day the question whether the FTCA immunizes exercises of policy discretion in violation of constitutional constraints that are not already clear" and stated that it was a question for the district court to explore on remand. *Id*. On remand, the district court found that the discretionary function exception did not apply, but only after first determining that the constitutional right allegedly violated was clearly established at the time of the violation. *See Loumiet v. United States*, 255 F. Supp. 3d 75, 83 (D.D.C. 2017).

5

*his* detention was not mandatory, as explained above, it falls within the discretionary function exception to the FTCA, which deprives the Court of subject matter jurisdiction in this case. *But see Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018) (the Immigration and Nationality Act "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded").

The "due care" inquiry asks only whether a government employee acted pursuant to statute or regulation. *Hatahley v. United States*, 351 U.S. 173, 181 (1956) (finding a lack of due care because the government did not follow the requirements of its own regulations). Plaintiff does not allege that government employees deviated from the statutory framework regarding immigration detention set forth at 8 U.S.C. § 1225 and 8 U.S.C. § 1231(g)(1), in transferring custody of his children to ORR. Thus, the conduct upon which Plaintiff's claims are based – separation from his children – resulted from the manner in which the government previously enforced federal immigration statutes.[4]

Plaintiff's arguments, if accepted by this Court, would effectively remove the due care exception from the FTCA wherever plaintiffs allege the government failed to act with "due care"— that is, according to Plaintiff, negligently. But of course, every FTCA claim alleges tortious or negligent conduct.

### 3. The Opposition Fails to Establish a Proper Private Person Analog

Plaintiff asserts that the requisite private person analog to the federal government's actions to detain him and transfer custody of his children can be found in *C.M v. United States*, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) at *2, which compared an immigration detention facility to a private nursing home. *See* Opposition at 22. In making this strained analogy, the *C.M.* court relied on *Estate*

---

[4] As the United States stated in the Motion, the United States has denounced the prior practice of separating children from their families at the United States-Mexico border and committed itself to family reunification. *See* Executive Order No. 14011 § 1 (Feb. 2, 2021), 86 Fed. Reg. 8,273, 8,273 (Feb. 2, 2021).

*of Smith v. Shartle*, 2020 WL 1158552 at *2 (D. Ariz. Mar 10, 2020), a case in which a sex offender inmate was housed with, and then murdered by, a gang member who previously had threatened to kill him. The *Shartle* court found an analogy to a nursing home's duty of care found in Arizona Revised Statutes § 46-455, which impose civil liability on private nursing home employees who cause or permit the life of a vulnerable adult to be endangered by neglect.

The *C.M.* court's analogy of the federal government's exercise of its authority to enforce federal criminal and immigration laws and make discretionary determinations concerning detention placement of noncitizens to the operation of a private nursing home is inapposite. *See McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016) ("[p]rivate persons cannot establish facilities to detain other persons – only the government can, either on its own or through a government contractor."); *Akutowicz v. United States*, 859 F.2d 1122, 1125 (2d Cir. 1988) (finding no private person analogy to revocation of citizenship which is conduct governed exclusively by federal law).

Plaintiff's reliance on *Cortez v. HCCI-San Antonio*, 131 S.W.3d 113, 121 (Texas, 2004) is also misplaced. There, a nursing home employee "'slam dunk[ed]'" an "elderly and disabled" nursing home patient into bed; "removed [her] call light from her bed or disconnected it from the wall; moved her food out of her reach; and moved a table on which her bedpan sat out of her reach." Similarly, in *Xue Lu v. Powell*, 621 F.3d 944 (9th Cir. 2010), an asylum officer sexually molested an asylum applicant in her home. The instant action does not present facts similar to these instances of elder and sexual abuse. Also inapposite are *Liranzo v. United States*, 690 F.3d 78 (2d Cir. 2012) (U.S. citizen improperly imprisoned as removable alien); *Avalos-Palma v. United States*, 2014 WL 3524758 at *1 (D.N.J. July 16, 2014) (deportation in violation of mandatory stay); and *Ruiz v. United*

*States*, 2014 WL 4662241, at *1 (E.D.N.Y. Sept. 18, 2014) (wrongful deportation of minor U.S. citizen).

### B.     Plaintiff's Post-Separation Allegations Fail as a Matter of Law

Plaintiff cites *Villafuerte v. United States,* 2017 WL 8793751 (S.D. Tex. Oct. 11, 2017), in support of his claim that his post-separation treatment by CBP officers states a claim upon which relief can be granted for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.  Opposition at 21.  However, *Villafuerte* undermines, rather than supports, Plaintiff's case.  First, the *Villafuerte* court noted that Texas law requires that a plaintiff show some physical injury, distinct from physical manifestations of emotional distress, in order to bring an ordinary negligence claim. *Id.* at *11 (S.D. Tex. Oct. 11, 2017) (citing *Temple–Inland Forest Prods Corp. v. Carter*, 993 S.W.2d 88, 91 (Tex. 1999)).  Plaintiff alleges only emotional injuries and therefore cannot state a claim for negligence under Texas law.[5]

Next, the *Villafuerte court* noted that in Texas, there is no recognized general duty imposed on a private person not to inflict emotional distress and that recovery for mental anguish damages is only allowed for the breach of "some other duty imposed by law" such as when there is a special relationship between the parties. *Id.* 2017 WL 8793571 at * 11 (citing *Fitzpatrick v. Copeland*, 80 S.W.3d 297, 302 (Tex. App.-Fort Worth 2002)).  The *Villafuerte* court found no special relationship between an immigration detainee and CPB and dismissed the plaintiff's claim for intentional infliction of emotional distress. *Id.  Accord Aguilar v. United States,* 2017 WL 6034652, at *3 (S.D. Tex. June 7, 2017).

Finally, the *Villafuerte* court noted that under Texas law, "[c]onduct that is merely rude or insensitive or that amounts to 'mere insults, indignities, threats,

---

[5] An FTCA claim is based on the law of the place where the act of omission occurred. Here, that is Texas.  *See* 28 U.S.C. § 1346(b).

8

annoyances, petty oppressions, or other trivialities' does not rise to the level of 'extreme or outrageous conduct'" required to establish intentional infliction of emotional distress. Similarly, "[t]ortious, malicious, or even criminal intent is not sufficient to establish the tort if the conduct is not objectively outrageous." *Villafuerte*, 8793571 at * 14 (citation omitted). Therefore, Plaintiff's allegations of post-separation verbal abuse, ridicule and threats fail to state a claim upon which relief can be granted under any of his causes of action. *See* Opp'n at 18.

### C. Venue Is Not Proper in This District

Under 28 U.S.C. § 1402 (b), FTCA claims "may be prosecuted *only* in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred" (emphasis added). Because the FTCA is a waiver of the United States' sovereign immunity, interpretation of its venue statute must comport with the "well-established principle that waivers of sovereign immunity must be construed strictly in favor of the sovereign." *Foster v. United States*, 522 F.3d 1071, 1074 (9th Cir. 2008). Residency for venue purposes is defined by 28 U.S.C. § 1391(c)(1) as: (1) a natural person, including an alien *lawfully admitted for permanent residence* in the United States, shall be deemed to reside in the judicial district in which that person is domiciled (emphasis added). An alien is "assumed not to reside in the United States." *Galveston, H. & S.A. Ry. Co. v. Gonzales*, 151 U.S. 496, 506-07 (1894). There is no dispute that Plaintiff is not a lawful permanent resident of the United States. Therefore, he is not a resident of California under § 1391(c)(1).

Plaintiff alleges that §1391(c)(1) applies to all natural persons, regardless of their immigration status, citing *J.P. v. Sessions,* 2019 WL 6723686 at *43 (C.D. Cal. Nov. 5, 2019). In *J.P.*, Judge Kronstadt found that the plaintiffs presented sufficient evidence to support venue in the Central District under 28 U.S.C. § 1391(e)(1)(B), because a "substantial part of the events or omissions giving rise to the claim occurred" in this District. *Id.* Indeed, the *J.P.* plaintiff's detention, alleged separation

9

from his daughter, and alleged insufficient medical treatment, all took place at a facility within the Court's district. *Id*. Thus, when the court noted that defendant's claim of improper venue was not persuasive, it did so because venue was proper under a different section of § 1391.

In fact, Judge Kronstadt explicitly stated that "[c]ourts have determined that non-citizens, including those who [are] not lawful permanent residents, do not reside in any district of the United States for purposes of venue." *Id.* Plaintiff's interpretation of § 1391(c)(1) would render the statute's reference to lawful permanent residents surplusage. *See Duncan v. Walker*, 533 U.S. 167, 174, (2001) (Noting that "'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant'") (quoting *Market Co. v. Hoffman*, 101 U.S. 112, 115, (1879)).

### III.  CONCLUSION

For the foregoing reasons, and those set forth in the Motion, Defendant requests that the Court dismiss Plaintiff's Complaint and action without leave to amend.

Dated: March 29, 2021        Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

*/s/ David Pinchas*
DAVID PINCHAS
Assistant United States Attorney

Attorneys for Defendant United States of America

10